THE GEORGE WHALLEY COMPANY, APPELLANT, *v.* NATIONAL
CITY BANK OF CLEVELAND, APPELLEE.*

[Cite as George Whalley Co. v. National City Bank
(1977), 55 Ohio App. 2d 205.]

(No. 36477—Decided November 10, 1977.)

*Mr. Daniel M. Roth,* for appellant.
*Mr. Ebert Weidner,* for appellee.

DAY, C. J.  This case arises out of a series of commercial paper transactions. Plaintiff-appellant, The George Whalley Company (plaintiff), brought suit against defendant-appellee, The National City Bank (defendant), on March 27, 1973. Plaintiff alleged that defendant cashed and debited to plaintiff a series of forged checks between January and June, 1972.  The checks were drawn on plaintiff's corporate checking account maintained at defendant's Chester-40th branch.

In Count I, plaintiff sought $30,000 compensatory damages based on defendant's refusal to credit plaintiff's account with the amount of the forged instruments. In Counts II and III, plaintiff alleged that defendant had acted negligently and recklessly in cashing the checks. Defendant answered and denied any wrongdoing. Defendant also charged that any loss sustained by plaintiff was due to plaintiff's negligent acts in (1) hiring and supervising its bookkeeper[1] and (2) failing to examine its bank statements promptly.

The case was tried to the court on April 6, 1976. The judge found in favor of plaintiff for $858.97[2] on Count I and in favor of defendant on Counts II and III. The judge supported his decision with Findings of Fact and Conclusions of Law.

Plaintiff filed a timely notice of appeal. Plaintiff assigns six errors.

The first and second assignments raise the same issue. They are treated together.

---

*Reporter's Note:  A motion to certify the record was overruled by the Supreme Court of Ohio, March 17, 1978.

[1]Plaintiff's bookkeeper during the relevant time period was Nancy Cherauka.  See Assignments of Error 1 and 2.

## I.

*Assignments of Error Nos. 1 and 2:*

"1. Finding of Fact No. 3 is not supported by any evidence in the record in that there is no evidence that Nancy Cherauka forged all the checks in issue.

"2. Finding of Fact No. 11 is not supported by any evidence in the record as there is no evidence to establish that each check in issue was forged by Nancy Cherauka."

The trial court found that plaintiff's exhibits 1-4 and 9-50 (checks) and plaintiff's exhibits 5, 6, and 8 (photocopies of checks) were drawn on plaintiff's account at National City Bank.[2] The court further found that the drawer's signature on each check was forged by Nancy Cherauka, plaintiff's former bookkeeper.[4]

There is little direct evidence in the record that Ms. Cherauka forged the instruments. She did not testify at trial. There is no eyewitness testimony to the forgery. Victor Whalley did testify, however, without objection that to his knowledge Cherauka plead guilty to forging the checks.[5]

The record also contains circumstantial evidence on the issue. For example:

(1) Plaintiff hired Ms. Cherauka in December, 1971, and discharged her in June, 1972.

(2) The first forged instrument was dated January 24, 1972, and the last was dated May 31, 1972.

(3) Victor Whalley testified that there had been no further forgeries after Ms. Cherauka's discharge.

(4) Of the 49 checks admitted into evidence, Nancy

---

[2]This is the sum of the three checks debited to plaintiff during the 14-day period after receipt of the January monthly statement. See R. C. 1304.29 discussed in Assignment of Error No. 5.

[3]Plaintiff established its account in 1956 at the latest and still maintained it on the date of trial.

[4]Plaintiff challenges the finding that Ms. Cherauka was the forger. This court notes that the position is inconsistent with that taken by plaintiff prior to trial. However, the trial brief is not part of the record.

[5]Victor Whalley is the President and Treasurer of the plaintiff-company.

Cherauka's name appeared as both payee and endorser on five.

(5) She is also listed as payee on plaintiff's exhibit 6.[a]

(6) The first forged instrument was applied to her installment loan held by defendant.

(7) Ms. Cherauka was in complete charge of plaintiff's books and financial records during her tenure at the Whalley Company. Her specific duties included preparing all checks, handling petty cash, and keeping records of accounts payable and receivable. She also took the company deposits to defendant's Chester-40th branch every business day. She was not, however, authorized to sign or cash checks.

(8) Victor Whalley testified as to the procedure followed upon receipt of the company bank statement and cancelled checks. He stated that he examined the statement to determine the account balance, but that he did not look at the individual checks.

(9) He then gave the checks and statement to the bookkeeper, but Ms. Cherauka did not report back to any corporate officer concerning the account. Nancy Cherauka was, therefore, the only person who examined the cancelled checks and had an opportunity to discover and report any forgeries. She did not do so.

A lower court finding of fact can properly be based on circumstantial evidence, see *Smith* v. *White* (1925), 3 Ohio Law Abs. 522, 523. Circumstantial evidence is sufficient "* * * where the chain of circumstances leads to a conclusion which is more probable than any other hypothesis reflected by the evidence." *McComis* v. *Baker* (1974), 40 Ohio App. 2d 332, 336.

From the evidence presented, a reasonable trier of fact could conclude that it was more probable that Nancy Cherauka was the forger. Findings of Fact 3 and 11 are both supported by the record.

---

[a]The exhibit is a photocopy of the face of a check only. Therefore, the endorsement—if any—is not in evidence.

Assignments of Error Nos. 1 and 2 are not well taken.

Assignment of Error No. 5 is discussed out of sequence because of the logical relationship it bears to the first two assignments of error.

## II.

*Assignment of Error No. 5*:

"5. The verdict and judgment was (*sic*) against the manifest weight of the evidence."

Plaintiff argues under this assignment that the trial court erred in finding (1) that the checks were all forged by the same person; (2) that the defendant-bank was not negligent in its check-cashing procedures employed by its tellers; and (3) that plaintiff could not recover for the checks cashed and debited in May despite the fact that plaintiff gave notice of the forgery in June. The first argument under this assignment is without substance for the reasons assessed in the discussion of Assignments Nos. 1 and 2.

The trial court based its judgment on R. C. 1304.20. The section provides in relevant part:

" Sec. 1304.29 (UCC 4-406) Customer's duty to discover and report unauthorized signature or alteration.

"(A) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries * * * the customer must exercise *reasonable care* and *promptness to examine* the *statement and items to discover his unauthorized signature* or any alteration on an item and must notify the bank promptly after discovery thereof.

"(B) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by division (A) of this section, the *customer is precluded from asserting against the bank*:

"(1) *his unauthorized signature* or *any alteration* on the item *if* the bank *also establishes that it suffered a loss by reason of such failure;* and

"(2) an unauthorized signature or alteration by the *same* wrongdoer on any other item paid in *good faith* by the bank after the first item and statement was available

to the customer for a reasonable period not exceeding fourteen calendar days and *before* the bank *receives notification* from the customer of any such unauthorized signature or alteration.

"(C) The preclusion under division (B) of this section does not apply *if the customer establishes* lack of ordinary care on the part of the bank in paying the item." (Emphasis added.)

The initial question under Part (A) of the statute is whether defendant acted in good faith in paying the disputed items.[7] This term is defined in the Code as "honesty in fact in the conduct or transaction concerned," R. C. 1301.01. The trial court found that good faith is presumed. Whether the statement of presumption was accurate or not, there is no evidence to the contrary. Further, the evidence affirmatively established that Ms. Cherauka was known to the defendant's tellers as The Whalley Company bookkeeper. There was also testimony that the forged signatures were very similar to the genuine one. It is reasonable to conclude from this that defendant acted in good faith.

The next consideration is whether plaintiff exercised reasonable care and promptness in examining its bank statement and checks. The requirement is designed to detect and prevent a wrongdoer—including a forger—from repeating his or her acts, see R. C. 1304.29, Comment 3.

Plaintiff's procedure upon receipt of the bank statement was discussed under Assignments 1 and 2. A reasonable trier of fact could conclude that this pattern of *unsupervised* bookkeeping constituted a failure to exercise reasonable care.

Once the bank established that it acted in good faith under R. C. 1304.29(A) and that plaintiff's behavior did not satisfy the requirements of the same subsection, the preclusion mechanism under R. C. 1304.29(B)(2) was trig-

[7]The bank's loss [R. C. 1304.29 (B) (1)] is established by the payment of the forged checks noted on the initial statements after the forgeries began.

gered.[8] The date on which the first item was "available" to plaintiff then determines whether plaintiff can recover for the May forgeries. Plaintiff received a bank statement and checks on approximately the third of each month.[9] Therefore, on about February 3, 1972, plaintiff received its January statement which included the initial forged check dated January 24, 1972. The first item, then, was "available" to plaintiff on about February 3, 1972.

When plaintiff entrusted the cancelled checks and statement to a surrogate, it was still charged with the knowledge that an honest employee would have acquired, see *White Castle System, Inc.* v. *Huntington Nat'l Bank* (1941), 36 Ohio Law Abs. 253, 259, where it is noted that some courts have followed the legal principle that "the customer is bound to know that which an honest employee would have ascertained in his reconcilement." This imputed knowledge is particularly appropriate where, as in the instant case, the customer permitted the same employee to both prepare the checks and reconcile the statements without supervision, *cf. White & Summers,* Uniform Commercial Code Section 16-6, p. 538.

Therefore, plaintiff had until 14 days after receipt of the January statement to discover and report any irregularities. Plaintiff did not do so until shortly after June 3, 1972. Accordingly, plaintiff is precluded from asserting any unauthorized signature on the items paid by the bank after 14 days following the January, 1972, statement.

Plaintiff argues that the preclusion mechanism does not apply because defendant did not exercise ordinary care. Section (C) of the statute does provide that the preclusion is inoperative where the customer establishes that the bank did not use ordinary care "in paying the item." This refers back to "the first item and statement" described in part (B)(2). The question of the exercise of

---

[8]The requirement that the signatures be "unauthorized" and executed by the "same wrongdoer" was met. See Assignment of Error No. 1.

[9]The bank did not mail the March statement until the 4th. Plaintiff received it after a somewhat longer interval than the others.

ordinary care is, therefore, limited to the bank's actions in cashing the first forged item.[10] Plaintiff does not call attention to specific evidence in the record to demonstrate lack of ordinary care in cashing the initial January 24, 1972, check, see App. R. 12. Although plaintiff states that an expert characterized the cashing of every check as "negligence", a careful reading of the record reveals that the witness was making a general statement about the practice of cashing post-dated checks. The lower court found that plaintiff did not establish defendant's lack of ordinary care. There is sufficient evidence in the record to support a reasonable mind in that conclusion and, thus, to support the judgment that defendant was liable only for the three forged items charged to plaintiff during the 14-day period following plaintiff's receipt of the January statement.

Assignment of Error No. 5 is not well taken.

### III.

*Assignment of Error No. 3:*

"3. Defendant's Exhibit N was admitted into evidence in error."

Exhibit N is a National City Bank pamphlet titled "Rules and Regulations Governing Commercial Accounts." Paragraph 7 of the Rules requires a depositor to notify the bank of any irregularity within 10 calendar days of receipt.

Plaintiff contends that the lower court erred in admitting the document because of lack of a proper foundation. The allegation of lack of a foundation stems from the fact that counsel did not establish that the rules were posted in the bank in conformance with R. C. 1107.06 (D). Reliance on this statute is misplaced. It does not govern a foundation element. The question whether the rules must be posted is a distinct issue pertinent to materiality and relevance. Were it otherwise, counsel could hardly com-

---

[10]In the context of this case R. C. 1304.29 (B) (2) means that the bank cannot charge the customer's account for any forged check appearing on the statement reporting the first forgery and any other forged check cashed within fourteen days after receipt of that statement.

plain. For he did not object to the lack of a foundation at the time the exhibit was introduced. Therefore, any objection on that score, well founded or not, was waived.

Considerations of evidential relevancy require an examination of R. C. 1107.06(D):

"All owners of any interest in each account, commercial or savings, who are such on January 1, 1968, shall be bound by the bank's rules and regulations of such date govering accounts. Subsequent amendments to such rules and regulations shall be posted in the bank and *shall be binding thereafter upon the then owners of any interest in all then existing accounts.*" (Emphasis added.)

The cover of Exhibit N indicates that it became effective May 15, 1964. The trial court found that the rules had been in effect prior to January 1, 1968. Because plaintiff was "owner of an interest" on January 1, 1968, it was bound by the rules and regulations.

The statute does not require that rules effective as of January 1, 1968, be posted. The plain language of the statute shows that only *subsequent* amendments must be posted. There is no evidence in the record that any such amendments exist.

Assignment of Error No. 3 is not well taken.

### IV.

*Assignment of Error No. 4:*

"4. Pursuant to Local Rule 21[11] Dennis Griesmer should not have been permitted to testify as an expert in defendant's case in chief because they never provided plaintiff with his identity and a summary of his opinions although requested to do so."

Mr. Griesmer was called by defendant as an expert witness on the subject of check cashing and processing in the banking industry. Defendant did not inform plaintiff that it intended to call this witness. Plaintiff contends that defendant should have been barred from presenting the witness under Local Rule 21.

---

[11]The reference is to the *Cuyahoga County Rules of the Court of Common Pleas.*

214

Local Rule 21(I)(A) precludes certain witnesses from testifying when counsel fails prior to trial to furnish the opposing party with any report made by such witness. In describing the type of information required to be exchanged, the rule speaks specfically in terms of damages sought to be proved for "medical expenses, lost earnings, [and] property damage * * *." In cases *other* than for recovery of damage to person or property, the provisions "* * * shall apply to the extent to which they are applicable," Rule 21(I)(A) paragraph 4.

The trial court held the rule inapplicable because the testimony of the witness was "* * * of a general nature, the very substance of a major part of this lawsuit." Plaintiff's claim of unfair surprise is, therefore, without foundation. The decision as to the applicability of the rule was within the sound discretion of the trial court. Such a decision enjoys a strong presumption of regularity. On the record there was no abuse of discretion shown nor was the presumption rebutted.

Assignment of Error No. 4 is not well taken.

### V.

*Assignment of Error No. 6:*

"6. The Court failed to rule on plaintiff's motion in limine filed prior to trial."

Plaintiff sought by motion *in limine* prior to trial to prevent defendant from asserting under R. C. 1303.42 that plaintiff had "substantially contributed" to the making of the unauthorized signatures.[12] Plaintiff argued that this was an affirmative defense that was waived unless specifically plead under Civ. R. 8(c). It now complains that the trial court erred in not ruling on the motion. Giving the most favorable consideration to plaintiff's contention and assuming such judicial omission to be error, the error is harmless. For it is apparent that either defendant's Second Defense to Counts One and Two[13] or its Second De-

---

[12]Appellee contends that a motion *in limine* is not a proper way in which to bring the matter before the trial court. However, it is not necessary for us to decide that issue.

[13]P. e., defendant alleged in its second defense to Counts One and Two:

fense to Count Three, both alleged in its answer, is sufficient to legitimize evidence supporting defenses under R. C. 1303.42.

Assignment of Error No. 6 is not well taken.

*Judgment affirmed.*

STILLMAN and KRUPANSKY, JJ., concur.

"If defendant charged to plaintiff's account any checks which were forged, plaintiff's loss resulted from its negligent failure to properly select and supervise its bookkeeper, reconcile its statements from defendant, and promptly notify defendant of discrepancies which seasonable and proper reconciliation of such statements would have disclosed."