Wilbur L. DEAN, Georgia F. Todd, and Phyllis Loan Lee, Trustees of the Wilbur L. Dean Trust, Appellants,

v.

CENTERRE BANK OF NORTH KANSAS CITY, Respondent.

No. WD 35412.

Missouri Court of Appeals, Western District.

Oct. 23, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 26, 1984.

Application to Transfer Denied Feb. 26, 1985.

Kenneth I. Grissinger, Kansas City, for appellants.

Jon M. Krebbs, Krebbs & Holdsworth, Liberty, for respondent.

Before CLARK, P.J., and NUGENT and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Appellants are trustees of a certain trust which had its bank account with respondent Centerre Bank of North Kansas City, Missouri (Bank). The trustees hired an accountant, Ron Jenkins, to administer the account. The only two living trustees, Logan and Lee both had authority to both write checks, Jenkins was authorized by them to receive the monthly bank statements and cancelled checks as well as all income payable to the trust for deposit. About a year after being hired, Jenkins began forging the signatures of the trustees on checks on the trust bank account. The checks were payable to Jenkins, his

firm R & J, or to Jenkins' creditors. Later, in an apparent attempt to pay back this money, Jenkins deposited some checks from his personal accounts in other banks. On fifteen occasions these checks were returned because of insufficient funds or the account having been closed. All the returned deposits and debit memos and forged checks were included in the monthly statements, but since these were mailed to Jenkins, the perpetrator, the trustees did not find out about the forgeries until informed by the prosecuting attorney.

The entire scheme of using forged checks went from June of 1978 until March of 1980. The net loss out of the trust account was $43,913.68. At no time did the trustees ever question Jenkins about the financial status of the trust account or did they ever ask to see a statement or cancelled checks.

About fourteen months after the first of Jenkins' checks were returned, the bank notified the county prosecutor that something was wrong with the trust account. Two days later Jenkins was arrested, found guilty and subsequently sentenced to three years in prison. He also was declared a bankrupt. The trustees filed suit against the bank for wrongful invasion of the trust account. The trustees filed suit in December of 1980 alleging Jenkins' acts were done with the actual knowledge of the bank. The petition further alleged that the bank should have monitored the account and advised the trustees of the forged checks and of the insufficient fund checks of Jenkins not being credited to the account. The trustees asked for the amount of the net loss under a conversion theory and also for punitive damages. On the day of trial they amended the petition by deleting the prayer for punitive damages and alleging the bank failed to use ordinary care and was negligent by failing to inquire of the trustees as to Jenkins authority "to dispose of trust funds;" by not inquiring of the trustees when checks were presented on unrelated trust activities," and failure to advise the trustees when Jenkins' checks to the trust didn't clear; and by not training an employee as to the limitations of the trust instrument. This amendment adding lack of ordinary care was made, "because that will circumvent and get around the portions of the Uniform Commercial Statute...." At the close of trustees' evidence, the bank moved for a directed verdict which was sustained. It is from this directed verdict that the trustees appeal.

■ The trustees claim that the bank assumed an additional responsibility when it accepted this account because this was a trust. While this may have been true at common law, when Missouri in 1959 adopted the Uniform Fiduciaries Act at §§ 456.240–456.350 RSMo 1978, it relieved the depository bank of the duty of seeing that fiduciary funds are properly applied. *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d 481, 490 (Mo. banc 1980). The Missouri Supreme Court held that mere negligence on the part of the depository bank is not sufficient to hold it liable to the principal if the fiduciary in fact misappropriated the fund. *Id.* Since the trustees only argue that the bank was negligent, there can be no liability under the Uniform Fiduciaries Act. They produced no evidence of "actual knowledge" by the bank of a breach of a fiduciary obligation of Jenkins to the trustees. *Id.* at 491. The trustees failed further to show "bad faith" on the part of the bank in handling the checks or returning the debits to Jenkins' office. Mere negligence does not amount to "bad faith," *Id.* 492, and there was no evidence support was put forth that the bank profited by the acts of Jenkins. *Id.* at 493. *Southern Agency Co. v. Hampton Bank of St. Louis,* 452 S.W.2d 100, 105 (Mo.1970).

The bank argues, and this court agrees, that the controlling statute is § 400.4–406 RSMo 1978 under the Uniform Commercial Code. The underlying premise is laid down in § 400.3–404(1) that any unauthorized signature is wholly inoperative to that person unless he is precluded from denying it. As pertains to this cause § 400.4–406 reads:

(1) When a bank sends to its customer a statement of account accompanied by

items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.

(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank

(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and

(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.

(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the items.

(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

The Missouri Code Comment following the section in V.A.M.S. says it specifically applies to forged signatures. The UCC Comment, also set out in 20B V.A.M.S., 413, explains that the duty of the customer to examine his monthly statement and promptly report any forgeries to the bank is triggered when the bank mails out the statement and cancelled checks. The effect of the failure of a customer to notify the bank is the preclusion of an action against the bank by the customer. The only way to avoid the preclusion is for the customer to establish lack of ordinary care on the part of the bank.

At trial the trustees only presented four witnesses. The prosecuting attorney of Clay County testified the bank notified him that there was "something wrong" with the trust account because Jenkins was putting his own checks in the trust account and they were bouncing. This witness further testified that Jenkins was convicted on the forgery charge.

The second witness had conducted an audit at the bank of the trust account. He went into great detail about the dates and amounts of the 15 personal checks of Jenkins that were returned for insufficient funds, and the 53 forged checks that were cashed. Nothing was said about the bank's lack of ordinary care.

The other two witnesses were the trustees whose signatures had been forged. They testified how they had hired Jenkins and that the signatures on the checks were in fact forged. They also testified that all the cancelled checks had been mailed to Jenkins and that they were totally unaware of Jenkins' illegal activities.

■ In essence the Code as adopted in Missouri, as applicable here, is as follows:

(1) The bank sent the statements to the agent of the trustees. This was the equivalent of sending them to the trustees.

(2) The trustees had the duty and obligation to exercise reasonable care and promptness to notify the bank of checks with forged signatures. The burden of proof on this point was on the bank. Here the evidence showed the trustees' failed to perform the duties which could preclude

them from collecting against the bank on the first forged check (if the bank could carry the burden and show a loss), and on all subsequent forgeries honored by the bank 14 days after the first forged item was made available to the customer. The comment at 20B V.A.M.S. 414 reads as follows:

> One of the most serious consequences of failure of the customer to comply with the requirements of subsection (1) is the opportunity presented to the wrongdoer to repeat his misdeeds. Conversely, one of the best ways to keep down losses in this type of situation is for the customer to promptly examine his statement and notify the bank of an unauthorized signature or alteration so that the bank will be alerted to stop paying further items. Hence, the rule of subparagraph (b) is prescribed and to avoid dispute a specific time limit for action by the customer is designated, namely fourteen calendar days.

(3) The preclusion to the trustees could have been avoided by the customer carrying the burden of establishing lack of ordinary care by the bank in paying these items.

The trustees in turning over the checking account to their agent, who, without supervision or audit received the statements resulted in their failure to use the standard of care of review and failure to supply timely notice to the bank. *George Whalley Co. v. National City Bank of Cleveland,* 55 Ohio App.2d 205, 380 N.E.2d 742, 747 (1977). The trustees are precluded from recovery against the bank, despite their lack of care, unless they can establish lack of ordinary care on the part of the bank.

Although belatedly amending their petition to allege lack of ordinary care, the trustees presented no evidence of either accepted standards of ordinary care in the banking world to detect such forgeries, or that the bank's methods did not meet this standard. As such they did not carry the burden they had and their cause must fail. *Ossip-Harris Insurance Inc. v. Barnett Bank of South Florida, N.A.,* 428 So.2d 363, 365 (Fla.App. 3 Dist.1983). In fact,

the trustees do not even show whether the forgeries were skillful or subject of detection by the bank. The facts here are similar to those in *Nu-Way Services, Inc. v. Mercantile Trust Company National Association,* 530 S.W.2d 743 (Mo.App.1975). Some 43 checks by an employee were forged over a period of months. The company agreed it had the burden under § 400.4–406(3) to prove the bank failed to use ordinary care, and the court found as a matter of law the company failed to do so. The court in *Nu-Way* at 747 noted the bank employed persons to review incoming checks against the signature cards and this was substantially the same as used by banks in the St. Louis area. It also found the forgeries sufficiently adroit as to escape detection. In contrast the bank in *Hanover Insurance Companies v. Brotherhood State Bank,* 482 F.Supp. 501, 505 (1979), admitted it did not have time to check signatures. They did not supply the forged checks, signature cards or any evidence with the legal file on appeal. The closest the evidence came to touching on this pivotal issue was the testimony of one of the trustees who said the bank should have caught the "big checks" that were coming through.

When reviewing a motion for directed verdict this court must consider evidence in a light most favorable to the appellant, but this court cannot supply evidence nor ignore evidence binding on the plaintiff. *Adler v. Laclede Gas Co.,* 414 S.W.2d 304, 306 (Mo.1967); *Levin v. Sears, Roebuck & Co.,* 535 S.W.2d 525, 527 (Mo.App.1976). The trustees had the burden of proof on the issue of whether the bank had failed to use ordinary care. Even if there was such evidence available, the trustees failed to present it in their case in chief.

■ The trustees' case did not really touch on § 400.4–406. They argue in the brief the attempts to replenish the account by Jenkins starting on January 3, 1979 should have caused the bank to tell them and thus stop the forgeries. The problem is however, contrary to their petition which says the forgeries commenced in November of 1979, the actual forged checks for which they want damages started on June 25,

1978 with a check for $4,000. As can best be gleaned from the trial exhibits, which the trustees failed to supply on appeal, the first three forged checks appeared with and on a statement sent by the bank on August 8, 1978. In accordance with the trustees' instructions this and all subsequent statements were sent to the office of R & J Accounting. As noted the first check was for $4,000 and payable to R.L. Jenkins, it was dated June 28, 1978 and deposited by Jenkins in the R & J account on July 21, 1978. The second was payable to R & J for $1,000 and was dated July 25, 1978 and was deposited the next day. The third check was dated August 4 payable to R & J for $250 and deposited in R & J's account on August 7, 1978.

The application of subsection (2)(a) would allow an interpretation that the first item would be the bank's responsibility, but after the first item and statement (dated August 8, 1978) were available, the customer had up to 14 days to notify the bank. Subsection (2)(b) *supra.* An argument could be made that the first three checks were the bank's responsibility since they first appeared on the August statement. *Industrial Systems of Huntsville, Inc. v. American National Bank of Huntsville, N.A.,* 376 So.2d 742, 744 (Ala.Civ.App. 1979). Any potential relief for the trustees under subsection (2) runs smack against subsection (4). The Comment on (4) at 20B V.A.M.S. 414–415 says subsection (2) is based on the use of care by the customer and the bank, while (4), "places an absolute time limit on the right of a customer to make claim for payment of altered or forged paper without regard to care or lack of care of either the customer or the bank. In the case of alteration or the unauthorized signature of the customer himself the absolute time limit is one year.... This recognizes that there is little excuse for a customer not detecting an alteration of his own check or a forger of his own signature."

Since the trustees never brought the matter to the bank's attention (suit was filed by them in December 1980), they did not comply with the one year limitation. Without compliance with (4), which is not based upon fault of either side, the customer here failed within one year from the first forged check, make a claim for that initial check or the other two forged checks on the first statement. With regard to the checks that followed, spanning over a years time, subsection (2)(b) prevails as a preclusion for the customer's recovery since (3) (a lack of ordinary care in paying the checks) was not proven of the bank by the trustees.

This translates into a finding of lack of reasonable care on the part of the trustees under § 400.4–406 (1) in that they never examined the statements and never notified the bank. The forgeries following at least the first three were subject to the bank's defense under (2)(b) since the trustees didn't carry their burden of under (3) of showing lack of ordinary care. As to the initial checks it is unnecessary to find a "loss" under (2)(a) as (4) would clearly cover those forgeries. The trial court's granting of a directed verdict as to all checks was correct and its judgment is affirmed.

All concur.