SCHOTT, Chief Judge.
This is a claim by Amico Centennial Insurance Agency, Inc. against First National Bank of St. Bernard Parish for the sum of the amounts of five checks drawn on Amico’s account with First National. The checks were drawn by Amico’s office manager, Stephanie Comiskey, and were signed by her alone. The Bank paid the checks contrary to Amico’s instructions on the signature card which required checks over $500 to be signed by two persons. The Bank defended on the ground that Amico had modified the agreement by drawing checks over a long period with only one signature. From a judgment in favor of the bank, Amico has appealed.
Amico’s original claim was for $57,396 on thirty-four checks signed by Comiskey *528 alone between June 10, 1982 and March 13, 1984, but before trial it limited its claim to the following five checks:
October 14, 1983 $5,887.00
November 28, 1983 6,786.36
December 30, 1983 512.14
January 31, 1984 2,197.60
February 13, 1984 512.14
Amico’s president, Ellen Planchard, testified that the other twenty-nine checks originally sued on were paid for legitimate purposes but that the five still in question were unauthorized. The two for $512.14 were payable to Comiskey’s order and the other three were in payment for insurance claims on policies that were not in existence. Through Comiskey’s negligence these policies had lapsed, the insureds were never notified and she paid the claims to conceal her dereliction. Comiskey had also written a great number of unauthorized checks for under $500 each but these required only one signature. Planchard discovered the problem when the Bank informed her that Amico’s account was overdrawn by $21,000.00.
The list of the thirty-four checks originally sued on shows that before the October 14, 1983 check now in question Comiskey had signed (alone) and the Bank paid checks in June and August 1982, March, May, June, and August 1983 and five in September, 1983 — eleven checks in all. Before she signed the next check in question in November, 1983 she signed (alone) and the Bank paid six in October, 1983. Between the November and December checks in question she signed (alone) and the Bank paid four. Before she signed the one in question in January, 1984 she signed one not questioned and between the January and February questioned checks she signed (alone) and the Bank paid six. Finally she signed (alone) one in March, 1984 which is not in question.
Furthermore, Planchard admitted that she wrote checks for over $500 on the account herself and signed alone. She stated that she could not recall how many times she did this but the Bank placed in evidence four checks signed by Planchard alone and paid by the Bank in August and October, 1983 and March and April, 1984. The Bank also introduced a check signed alone by Linda M. Ciaccio, another Amico employee, in May, 1983.
The trial court made the following findings and conclusions which are amply supported by the record:
“In this case, although there was a written contract between the paries, i.e. the signature card, the evidence indicates that the contract was modified by silence, in action or implication. The written agreement provided that any items over $500.00 needed two signatures. Ms. Ellen Planchard, president of Amico, testified at trial that certain checks in amounts greater than $500.00 were paid although they contained only her signature, contrary to the written contract. Amico not only initiated this course of conduct but failed to object to the Bank’s good faith payment of these several items. Therefore, Amico, by its actions or inactions, tacitly or implicitly consented to the Bank’s practice of payment on only one signature, whether it was Ms. Planchard’s or Ms. Comiskey’s. The Bank was reasonably led to believe that the agreement had been so modified by this course of dealing. Amico was negligent in substantially contributing to the payment on the alleged unauthorized signatures. Because of Amico's acceptance without objection, protest or complaint of the manner or performance, plaintiff is estopped from recovery of damages.”
LSA-R.S. 10:4-106 provides in pertinent part as follows:
“(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.
“(2) If the bank establishes that the customer failed with respect to an item *529 to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank.
(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and
(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.
(3) The preclusion under subsection (2) does not apply if the customer established lack of ordinary care on the part of the bank in paying the item.”
The record establishes that Amico was on notice that checks were being paid on one signature long before the first one now in suit. It was on notice not only that Comiskey was alone signing checks but that at least one other employee as well as Amico’s own president was doing so. Under these circumstances the Bank’s good faith and the other elements of the statute were established. Since Amico failed to establish lack of ordinary care on the part of the Bank in paying the items, the suit was correctly dismissed.
AFFIRMED.