KNIGHT COMMUNICATIONS, INC., et
al., Respondents,

v.

The BOATMEN'S NATIONAL BANK
OF ST. LOUIS, Appellant.

No. 57768.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 8, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 7, 1991.

Application to Transfer Denied
April 9, 1991.

Robert B. Hoemeke, Sanford Boxerman, St. Louis, for appellant.

Gregory G. Fenlon, Gerald Michael Dunne, St. Louis, for respondents.

CARL R. GAERTNER, Judge.

Boatmen's National Bank of St. Louis (bank) appeals from a judgment in a jury trial in favor of Larry Brown and Edna Brown, statutory trustees of a defunct corporation, Knight Communications, Inc., for breach of contract. We reverse.

In late 1985 or early 1986, two couples, the Browns and the Knights, formed a cable television construction business known as Knight Communications, Inc., with the four principals as directors. The Browns provided about $50,000 of capital and the Knights operated the company. According to the signature card agreement for the corporate checking account opened in January, 1986, and the understanding of the parties, each check written required the signature of one of the Browns and one of the Knights. Rescission or modification of the contract required written notification to the bank. Beginning February 21, 1986, the bank began honoring checks with the signatures only of one or both Knights. Bank tellers brought the improperly signed checks to the attention of the manager of the branch, John Strasser, who approved their clearance without a Brown signature. Mr. Strasser claimed that he contacted Mr. Brown personally and secured his permission to honor some of the checks, and on other occasions when Mr. Brown was in the bank, Mr. Brown signed some of the checks. Mr. Brown denied he ever gave either oral or written permission to the bank to honor the checks without a Brown signature. Mr. Brown testified that he telephoned the bank to inform it of the improperly honored checks when the Brown–Knight joint enterprise ended in August 1986 and he received the corporation's papers. Mr. Brown delivered some of the improperly signed checks to his attorney and subsequently Mr. Knight delivered additional cancelled checks directly to the Browns' attorney.[1] The Knights' present whereabouts is unknown.

On September 9, 1988 Knight Communications filed a petition for breach of contract based on a $10,000 check dated May 19, 1986. An amended petition filed February 27, 1989, sought damages of $45,000 on behalf of the corporation for all checks signed only by the Knights in Counts I, on behalf of the Browns personally in Count II, and damages, both actual and punitive, and costs for conversion in Count III. After denial of an amended motion for summary judgment, a trial was held July 13–17, 1989. The jury returned a verdict in favor of Knight Communications, Inc. and assessed damages at $15,883.40.

The bank contends that the trial court erred when it denied its motions for a di-

1. One hundred and five checks lacking a Brown signature were admitted into evidence out of at least five hundred and two checks issued by the corporation between February and May 21, 1986. Of these, thirty-two were dated May and totalled $18,858.13 (of which six were payable to James or Mary Knight and totalled $2,185.12); forty-seven dated April totalling $14,101.19 (of which nine were payable to James or Mary Knight and totalled $3,487.17); twenty-two dated March totalled $7,129.94 (of which six were payable to James Knight and totalled $2,024.65); and five in February with only James Knight's signature totalled $574.39 (none payable to a Knight). Eight of the checks, payable to the bank and endorsed by James and/or Mary Knight, amounted to $2,423.23. A cashier's check was issued for $1,231.49 in April without explanation. The total debits to the corporate account from the exhibits amount to $41,895.14. The total of checks payable directly to Mary or James Knight amounts to $7,696.94.

Boatmen's introduced evidence that some of the checks benefited the corporation, because they covered legitimate business expenses.

rected verdict and judgment n.o.v., because Knight Communications' failure to notify the bank of the checks with unauthorized signatures within the statutory one year limit precludes recovery. The statute imposes upon the bank customer a duty to "discover and report his unauthorized signature or any alteration on the face or the back of the item" within one year from the time a statement and items are made available to him. § 400.4–406(4) RSMo. (1986) The time limit bars recovery, regardless of fault. *Dean v. Centerre Bank of North Kansas City*, 684 S.W.2d 373, 377 (Mo.App. 1984).

█ When reviewing a trial court decision to deny a motion for a directed verdict, the appellate court considers the evidence in the light most favorable to the party opposing the motion. *Consolidated Public Water Supply v. Farmers Bank*, 686 S.W.2d 844, 849 (Mo.App.1984). We view the evidence and all reasonable inferences to be drawn therefrom in the light most supportive of the verdict of the jury, disregarding all evidence and inferences to the contrary. *Brickner v. Normandy Osteopathic Hospital*, 746 S.W.2d 108, 112 (Mo.App.1988).[2]

## UNAUTHORIZED SIGNATURE

Appellant first argues that an unauthorized signature under § 400.4–406(4) includes a missing but required signature. The Comment explains that the term unauthorized signatures in this section "applies specifically both to forged signatures and forged endorsements...." Missouri Code Comment (4), 20B V.A.M.S. 413 (1976). The statute defines an unauthorized signature or endorsement as "one made without actual, implied, or apparent authority and includes a forgery." § 400.1–201(43), RSMo. (1986).

No Missouri cases have determined whether the absence of a required signature constitutes an unauthorized signature.

A majority of jurisdictions addressing the issue conclude that when a check requires two or more signatures, the lack of any one of them is an unauthorized signature under UCC 4–406(4). See:

Arkansas: *Spears Carpet Mills, Inc. v. Century National Bank of New Orleans*, 6 UCC Rep.Serv.2d 503, 505, 85 BR 86 (W.D.Ark.1988), applying Louisiana law; *Cooley v. First Nat'l. Bank of Little Rock, Arkansas*, 276 Ark. 387, 635 S.W.2d 250, 252 (1982); *Pine Bluff Nat'l. Bank v. Kesterson*, 257 Ark. 813, 520 S.W.2d 253, 258 (1975).

Florida: *Burdine–Coakley v. Capital Bank*, 542 So.2d 1019, 1020 (Fla.App. 1989); *Southern Contract Carpet, Inc. v. County National Bank of South Florida*, 528 So.2d 42, 43 (Fla.App.1988).

Louisiana: *Amico Centennial Ins. Agency, Inc. v. First Nat'l. Bank of St. Bernard Parish*, 543 So.2d 527, 529 (La. App.1989).

Michigan: *King of all Mfg., Inc. v. Genesee Merchants Bank & Trust Co.*, 69 Mich.App. 490, 245 N.W.2d 104, 105 (1976).

New Jersey: *Provident Savings Bank v. United Jersey Bank*, 207 N.J.Super 303, 504 A.2d 135, 141 (1985). The definition of "unauthorized signature" in § 400.1–201–(43) includes an instrument lacking necessary signatures. The case thoroughly discusses the law on this issue in other states.

New York: *Fireman's Fund Insurance Co. v. National Westminster Bank U.S.A.* [144 Misc.2d 468] 543 N.Y.S.2d 604, 606 (Sup.1988).

Texas: *La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 562 (Tex.1984).

Wisconsin: *Rascar, Inc v. Bank of Oregon*, 87 Wis.2d 446, 275 N.W.2d 108, 111 (App.1978).

A few jurisdictions hold that the absence of necessary signatures does not constitute

---

2. The parties have not suggested nor have we been able to discern a rational basis for the jury's award of $15,883.40. No pattern, series, or combination of the 105 challenged checks totalling $41,895.14 add up to the amount of the verdict. Notwithstanding this enigma, we consider plaintiff to be the prevailing party and consider the evidence in the light most favorable to the plaintiff.

an "unauthorized signature" within the meaning of UCC 4–406. See:

District of Columbia: *G & R Corp. v. American Sec. & Trust Co.*, 523 F.2d 1164, 1169 (D.C.Cir.1975) although arguably the decision has been undermined by *Kuwait Airways Corp. v. American Security Bank*, 890 F.2d 456, 463–4 and n. 12 (D.C.Cir.1989).

Illinois: *Spec–Cast, Inc. v. First Nat. Bank & Trust Co. of Rockford*, 128 Ill.2d 167 [131 Ill.Dec. 168, 171] 538 N.E.2d 543, 546 (1989); *Madison Park Bank v. Field*, 64 Ill.App.3d 838 [21 Ill. Dec. 583, 585] 381 N.E.2d 1030, 1032 (1978); *Nagle v. LaSalle Nat. Bank*, 472 F.Supp. 1185, 1192 (N.D.Ill.1979).

California: *Far West Citrus, Inc. v. Bank of America, N.T.S.A.*, 91 Cal. App.3d 913, 917, 154 Cal.Rptr. 464, 466 (1979).

Maryland: Missing signatures are not unauthorized signatures because they are not forged, made without authority, nor do they constitute an alteration. *Wolfe v. University Nat. Bank*, 270 Md. 70, 310 A.2d 558, 560 (Md.App.1973).

Several treatises address the definitional problem of unauthorized signatures under UCC 4–406. White and Summers note that checks with "defective drawer's signatures" have become more common because of "customer's attempts to avoid estoppel under 4–406's time limitations" and summarize the split between the jurisdictions. White & Summers, Uniform Commerical Code, Vol. 1, § 18–3 at 878–879 (3d ed., 1988). Brady points out the inconsistency of "distinguish[ing] the case of payment of a two signature check on only one signature, from the case of payment of a two-signature check bearing the genuine signature of one of the authorized signers and the forged signature of another authorized signer. It would seem that the one-year time limit for reporting ought to apply in all such instances." H. Bailey, Brady on Bank Checks, para. 29.19 at 29–38 (6th ed. 1987).

■ The contract between the corporation and the bank authorized payment of a check containing two signatures. There-fore, anything less than the required combination was an "unauthorized" signature. Moreover, defining a missing but necessary signature as an unauthorized signature implements the public policy of 400.4–406 (see UCC Comment 7, 20B V.A.M.S. 415; *Provident Savings Bank*, 504 A.2d at 140–141) without imposing a duty more onerous than that required by the identification of forgeries. Indeed, missing signatures are more readily spotted by the customer, and therefore the burden is less. We hold that a missing but necessary drawer signature constitutes an "unauthorized signature" within the meaning of § 400.4–406(4).

## DUTY TO DISCOVER AND REPORT

■ Section 400.4–406 clearly places upon a bank's customer the duty of bringing to the bank's attention any item containing an unauthorized signature which has been debited to the customer's account. It "evidence[s] a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items." UCC Comment 7, 20B V.A.M.S. 415. Failure to "discover and report" the unauthorized signature within one-year from the time the bank makes available to the customer a statement of account accompanied by items paid in support of debit entries, precludes the customer's assertion of a claim against the bank. This constitutes "an absolute time limit on the right of a customer to make claim ... without regard to care or lack of care of either the customer or the bank." UCC Comment 5, 20B V.A.M.S. 414–15. The absolute nature of the time limit distinguishes it from a statute of limitations. The limitation "is not merely a statute of limitations, but a rule of substantive law barring absolutely a customer's untimely asserted right to make a claim against the bank." *Provident Savings Bank*, 504 A.2d at 137, quoting from *Brighton, Inc. v. Colonial First National Bank*, 176 N.J.Super 101, 422 A.2d 433, 437 (App.Div.1980) aff'd 86 N.J. 259, 430 A.2d

902 (1981). The statute establishes a condition precedent to an action which, unlike a statute of limitations, may not be tolled. *Pine Bluff Nat'l Bank v. Kesterson*, 257 Ark. 813, 520 S.W.2d 253, 259 (1975); *Billings v. East River Savings Bank*, 33 A.D.2d 997, 307 N.Y.S.2d 606, 607 (1970).

■ Statements and cancelled checks were mailed by the bank to the address of Knight Communications every month. The fact that these statements were received and reconciled by Mary Knight and not examined by Mr. or Mrs. Brown, even though they operated other businesses at the same address, does not prevent the running of the one-year period from the date each statement was mailed. *See Dean*, 684 S.W.2d at 375. By sending the statements and cancelled checks each month, the bank triggered the duty of its customer, Knight Communications, to discover and report to the bank any item containing an unauthorized signature within one year.

The bank offered evidence that no report from Knight Communications or from Mr. Brown individually of any check containing an unauthorized signature was made until September, 1988, when the Browns filed the original petition alleging the improper payment of one check in the amount of $10,000. The bank asserted it was not made aware of the other 104 checks claimed to have been improperly honored until the filing of an amended petition on February 27, 1989. All of the checks at issue were cashed between February and May of 1986 and were sent to Knight Communications no later than June, 1986.

The only evidence to dispute the bank's contention was Mr. Brown's testimony that he telephoned Mr. Strasser some time between August and November of 1986 to advise him that some of the checks he had received from Mr. Knight did not contain the signature of either of the Browns. Despite Mr. Strasser's denial of any such conversation, by viewing the evidence in the light most supportive of the jury's verdict, we take the August telephone call as an established fact. The question thus presented is whether or not what Mr.

Brown said to Mr. Strasser during this telephone conversation is sufficient to fulfill the statutorily imposed duty to "discover and report" the unauthorized signature checks.

Mr. Brown testified that on one occasion, after Mr. Knight gave him a brown paper bag containing some of the corporation's papers, he telephoned Mr. Strasser and said it had come to his attention that some checks without a Brown's signature had been cashed. He did not tell Mr. Strasser the quantity of checks involved, the amounts of any or all of them, the dates or number of any check, the name of the payee or any specific information regarding any check. Mr. Strasser may have requested that he bring the checks to him at the bank, but Mr. Brown told him he was going to take them to his attorney. Other than the unidentified checks in the brown paper bag, Mr. Brown was unaware of any other checks given to his attorney by Mr. Knight until the latter part of 1988.

■ The Uniform Commercial Code does not define the word "report". The Code does not prescribe any particular form nor indicate any required content of the report. The bank strenuously argues that the telephone conversation between Mr. Brown and Mr. Strasser fails to comply with the statutory requirement of a report because of the lack of specificity regarding the checks. Although we are inclined to agree, we need not decide the precise issue of the degree of specificity required. Rather, we find dispositive the fact that Mr. Brown's testimony fails to identify which of the 105 checks he discovered within one year after the receipt of the statements and which of them he first discovered after that time. Regardless of the sufficiency of his telephone conversation, he could not have reported those checks not brought to his attention until 1988. The record totally fails to differentiate between which unauthorized signature checks may have been in the brown paper bag given to Mr. Brown in 1986 and those given to him by his attorney in the latter part of 1988. If the telephone conversation was sufficient to constitute a "report" under the statute, and we do not

say that it is, the claim involving unauthorized signature checks Mr. Brown discovered and "reported" at that time would not be barred by virtue of § 400.4–406. A claim based upon the balance of the 105 checks would be barred because of his failure either to discover or to report them. Under the evidence it is impossible to determine which checks fall in one category and which fall into the other.

 In their brief Mr. and Mrs. Brown argue that they were relieved of the statutory duty to discover and report because the evidence established that through its internal procedures the bank knew or should have known of unauthorized signature checks at the time they were cleared. No authority is cited in support of this argument and it is implicitly rejected in all of the cases cited above which have held that § 400.4–406 applies to missing signature checks. Indeed, acceptance of the Brown's argument would result in a total abrogation of the statute in such cases and would violate the public policy underlying § 400.4–406 of "imposing on customers the duty of prompt examination of their bank statements." UCC Comment 7, 20B V.A. M.S. 415.

Additionally, the evidence fails to establish with any specificity whatsoever what damages may have been sustained by Knight Communications by reason of the bank's honoring unauthorized signature checks. Mr. Brown admitted that some of the improperly signed checks were paid to *corporation employees or suppliers of equipment*. No evidence tending to distinguish between checks for which the corporation received value and those for which the proceeds were misappropriated was introduced.

The evidence leaves both the identity of the unauthorized signature checks not barred by § 400.4–406 and the amount of the loss sustained by Knight Communications entirely in the realm of speculation and conjecture. Therefore, the trial court erred in denying the bank's motion for directed verdict at the close of all the evidence and its motion for judgment notwithstanding the verdict.

The judgment is reversed.

SMITH, P.J., and SATZ, J., concur.