DOW CITY CEMETERY
ASSOCIATION,
Appellant,

· v.

DEFIANCE STATE BANK, Appellee.

No. 97–1822.

Supreme Court of Iowa.

July 8, 1999.

Bradley J. Nelson of Norelius & Nelson, P.C., Denison, for appellant.

Jeffrey L. Larson of Larson, Childs, Hall & Christensen, P.C., Harlan, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, SNELL, and CADY, JJ.

McGIVERIN, Chief Justice.

Plaintiff Dow City Cemetery Association filed a breach of contract action against defendant Defiance State Bank after it discovered that its secretary/treasurer had embezzled more than $59,000 through wrongful transfers and withdrawals of funds from accounts held at defendant bank. Plaintiff asserted that the bank breached its contracts with plaintiff by allegedly allowing plaintiff's secretary/treasurer to make transfers and withdrawal of funds from the accounts without the required number of signatures necessary to make a transfer or withdrawal of funds. The district court entered judgment in favor of defendant bank and plaintiff appeals. We affirm.

## I. Background facts and proceedings.

Plaintiff Dow City Cemetery Association (the cemetery) is an Iowa corporation that owns a cemetery in Dow City, Iowa. The cemetery has two savings accounts with defendant Defiance State Bank, one referred to as the "Mathys account" and the other which we will refer to as the "savings account." The cemetery also has a checking account with defendant bank.

Each account was governed by an agreement between the bank and plaintiff entitled Multiple Deposit Account Agreement. Under these agreements, two signatures were required to make a withdrawal from the Mathys savings account, and one signature was required to make a withdrawal from the checking account and the savings account. The normal practice, however, was that checks drawn on the cemetery's checking account bore the signature of the president of the cemetery board and that of Starla Steinkuehler, the cemetery secretary/treasurer. Each agreement also contained language stating that if the cemetery did not notify the bank of an unauthorized signature or alteration within a reasonable time (not to exceed fourteen days), or of any other problems involving the account statements within sixty days after the statements were made available to plaintiff cemetery, then the cemetery could not assert any claims against the bank concerning unauthorized signatures or alterations.

Starla Steinkuehler was hired by the cemetery in May 1990 to be the cemetery's secretary/treasurer. Starla's husband, who was the mayor and fire chief of Dow City, was also on the cemetery board. Starla's assigned duties were to balance the account statements of the cemetery association, present the financial reports to the board at meetings, pay bills, write checks, review bank statements and canceled checks, and make deposits. Starla paid bills of the cemetery by writing out checks from the cemetery's checking ac-

count. The checks were signed by Starla and by the sitting president of the cemetery board. Past president of the cemetery board Victor Thomsen testified that he occasionally pre-signed checks, which he then gave to Starla. He explained that these checks were to pay the electric bills and that REC was written on the payee line when he signed them. Past cemetery board president Gene Garrett also pre-signed some checks at Starla's request.

Despite the signature requirements to make withdrawals from the respective accounts, a practice developed whereby when the checking account was overdrawn the bank would contact Starla by telephone and inform her of the overdraft. Starla would then orally instruct a bank employee to transfer funds from the Mathys account or the other savings account to the checking account. The bank followed Starla's instructions and would transfer funds in excess of the overdraft to the checking account. This occurred approximately twenty-five times.

According to testimony of a bank employee, Victo Thomsen, past president of the cemetery board, on one occasion orally instructed the bank to transfer funds from the savings account to the checking account, "like [the bank] had been doing."

During this same time period, Starla also had developed a practice of forging the signature of the president of the cemetery board on the checks. Using pre-signed checks or by forging the president's signature on checks drawn on the cemetery's checking account and by verbally instructing the bank to transfer funds from the saving accounts to the checking account to cover checks written to herself, her husband, and others, Steinkuehler managed to misappropriate $59,482.57 between August 1992 and November 1994 from the three cemetery accounts. Starla's authorized compensation for the period May 21, 1990 through December 31, 1994 totaled $3275.00.

During the relevant time period, neither the cemetery's president nor any member of the cemetery's board of directors reviewed any of the bank's statements nor any of the canceled checks.

Starla's activities were eventually discovered and Starla was convicted of theft for misappropriating the funds from the cemetery accounts and was ordered by the criminal court to make restitution in the amount of $59,482.57. At the time of the present civil case trial, Starla had made restitution to the cemetery only in the amount of $3,199.60.

Thereafter, the plaintiff cemetery filed a petition in district court against defendant bank, alleging that the bank breached its agreements with the cemetery by transferring funds from the two savings accounts without requiring the signatures mandated by the agreements and that the bank was negligent in paying checks with the forged signatures.

In its answer, defendant bank asserted that "[a]ll transactions from the association's accounts with the Defiance State Bank were reflected in bank statements sent to the association to the Board of Directors of the Dow City Cemetery Association."

The matter proceeded to trial to the court on stipulated facts and the testimony of witnesses. Before putting on evidence, the cemetery dismissed count II of its petition concerning negligence by the bank.

Following the trial of this law action, the district court entered judgment against plaintiff and in favor of defendant bank. The court concluded that although the agreements governing the accounts required signatures to make a withdrawal, the parties had developed a "course of dealing" whereby the bank made transfers from the savings accounts to the checking account pursuant to Starla's oral instructions by telephone, and that this course of dealing between the bank and the cemetery qualified the terms of the agreement regarding required signatures. The court

also noted that the cemetery had ample opportunity to examine the bank statements and the checks drawn on the checking account bearing forged or unauthorized signatures, but had not done so. Additionally, the court found that the cemetery failed to prove that the bank did not exercise ordinary reasonable care concerning the cemetery's business at the bank. The court also impliedly concluded, pursuant to Iowa Code section 554.4406 (1995), that the cemetery was precluded from asserting claims against the bank concerning unauthorized signatures and withdrawals.

Plaintiff cemetery appeals.

## II. Standard of review.

This law action was tried to the district court. Our standard of review in such cases is for correction of errors at law and the court's findings of fact have the effect of a special verdict. *See* Iowa R.App. P. 4. In such cases, the court's findings of fact are binding upon us if supported by substantial evidence. *See* Iowa R.App. P. 14(f)(1). "Evidence is substantial if a reasonable mind could accept it as adequate to reach the same findings." *Bluffs Dev. Co. v. Board of Adjustment,* 499 N.W.2d 12, 14 (Iowa 1993). Under this standard, we view the evidence in a light most favorable to upholding the district court's judgment. *See Fuller v. Iowa Dep't of Human Servs.,* 576 N.W.2d 324, 328 (Iowa 1998).

1. Iowa Code section 554.4406 states in pertinent part:
    3. If a bank sends or makes available a statement of account or items pursuant to subsection 1, *the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized.* If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

## III. Duty to examine account statements under agreements governing bank accounts and under Iowa Code section 554.4406.

Each of the three accounts was governed by an agreement containing the following language:

**STATEMENTS**—If you [the cemetery] do not notify us [the bank] of an unauthorized signature or alteration within a reasonable time (not to exceed 14 days) after we send or make available to you your statement and items: (1) you cannot assert the unauthorized signature or alteration against us, even if we are unable to show a loss due to your failure and, (2) you cannot assert any unauthorized signatures or alterations by the same wrongdoer on items paid by us after the reasonable time mentioned above elapses, but before we receive your notice. We lose these protections if we fail to exercise ordinary care in paying an item with an unauthorized signature or alteration, unless you do not notify us of the problem within 60 days of when we send or make available to you the statement and items. *You must also report any other account problem (e.g. erroneous statement of passbook entry, missing signature, unauthorized endorsement, etc.) within this 60-day period or lose your right to assert the problem against us.*

(Emphasis added.) The quoted language from the agreements tracks with Iowa Code section 554.4406 of Iowa's Uniform Commercial Code.[1] The record reveals

4. If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection 3, *the customer is precluded from asserting against the bank:*
    a. the customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and
    b. the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or

that statements to the cemetery from defendant bank showing transactions for the three accounts were dated approximately every three months.

The cemetery recognizes that it had a duty under the written agreements governing the accounts to examine its bank statements and further admits that it delegated this duty to Starla. The cemetery seems to contend, however, that it was excused from any duty it had to examine its bank statements because the bank, in the first instance, breached the agreements by transferring funds pursuant to Starla's verbal instructions rather than transferring funds from the savings accounts to the checking account upon the required number of signatures as the bank had agreed to do under the agreements governing the accounts. The cemetery thus contends that it had no duty to tell the bank that the bank had breached its own agreements. Additionally, the cemetery contends that Iowa Code section 554.4406 is not applicable to the facts of this case because the section only addresses situations involving unauthorized signa-

tures or altered instruments, not lack of a required signature to make a withdrawal from an account as is the case here.

Upon our review, we conclude the district court properly entered judgment in favor of defendant bank.

■ Iowa Code section 554.3403(2) provides, "[i]f the signature of more than one person is required to constitute the authorized signature of an organization, *the signature of the organization is unauthorized if one of the required signatures is lacking.*" (Emphasis added.)[2] In other words, the absence of a signature required to make a withdrawal constitutes an "unauthorized" signature. Thus, section 554.3403(2) clearly applies to the facts of this case. Therefore, pursuant to section 554.3403(2), section 554.4406, and the language of the agreements governing the accounts, the cemetery had a duty to examine its account statements and notify the bank of any transactions that had been made without the required authorized signatures. *Cf. Husker News v. South Ottumwa Sav. Bank,* 482 N.W.2d 404, 408

alteration and after the customer had been afforded a reasonable period of time, not exceeding sixty days, in which to examine the item or statement of account and notify the bank.

5. If subsection 4 applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection 3 and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection 4 does not apply.

6. Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection 1) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. If

there is a preclusion under this subsection, the payor bank may not recover for breach of warranty under section 554.4208 with respect to the unauthorized signature or alteration to which the preclusion applies. (Emphasis added.)

**2.** Subsection (2) in Iowa Code section 554.3403 clarifies the meaning of "unauthorized" in cases in which an instrument contains less than all of the signatures that are required as authority to pay a check. *See* Uniform Commercial Code Comment 4, Iowa Code Annotated § 554.3403 (West 1995) (discussing UCC § 3–403(b), the equivalent of Iowa Code § 554.3403(2)). Subsection (2) essentially codified the majority rule which held that a signature was unauthorized under Iowa Code section 554.4406 (the section imposing a duty on the customer to examine bank statements and to notify the bank of unauthorized signatures) if all signatures required to authorize payment of a check did not appear on the check. *See Pine Bluff Nat'l Bank v. Kesterson,* 257 Ark. 813, 520 S.W.2d 253, 258 (1975) (concluding that the purported signature of a trust fund with less than the required number of signatures was an unauthorized signature).

(Iowa 1992) (noting that Iowa Code § 554.4406 creates a duty owed by a bank customer to a bank but does not extend any duties to parties outside the bank-customer relationship). As the trial court found, if the cemetery had examined its statements, it surely would have noticed that the $60,000 sum it had deposited in the Mathys account and the funds in the other savings account were being depleted. The cemetery's next step or duty would have been to contact the bank about the withdrawals from the two savings accounts at which time the bank would have explained that it made the transfers to the checking account according to Starla's instructions. The cemetery, however, did not examine its statements nor take any follow-up action.

■ The fact that the cemetery relied on Starla to examine the bank statements did not relieve it of its own duty to examine the statements and notify the bank of any unauthorized signatures or alterations. This is because "[m]isplaced confidence in an employee will not excuse a depositor from the duty of notifying the bank of alterations on items paid from the depositor's account." *K & K Mfg., Inc. v. Union Bank,* 129 Ariz. 7, 628 P.2d 44, 48 (Ct.App. 1981), *criticized on other grounds in Schoenfelder v. Arizona Bank,* 165 Ariz. 79, 796 P.2d 881, 890 n. 6 (1990). *See also Pine Bluff Nat'l Bank v. Kesterson,* 257 Ark. 813, 520 S.W.2d 253, 258 (1975) (depositor is not excused from duty of examining bank account statements by entrusting its performance to an incompetent or dishonest agent in the absence of reasonable diligence in supervising the agent's conduct); *Kiernan v. Union Bank,* 127 Cal. Rptr. 441, 444, 55 Cal.App.3d 111, 115 (Cal.Ct.App.1976) ("The fact that the employee of a bank's customer has concealed a forgery does not obviate the customer's responsibility to examine [its] own statements."); *Jersey Steel v. Warburton,* 139 N.J. 536, 655 A.2d 1382, 1387 (1995) (noting that a customer is not excused from the duty to examine canceled checks and

account statements and to notify bank of irregularities simply because it entrusted performance of these duties to an incompetent or dishonest agent, but holding that bank failed to exercise ordinary care in paying items).

■ Not only was the cemetery not excused from its duty of examining the bank account statements, but it also is charged with knowledge of information contained in those statements. *See K & K,* 628 P.2d at 48 (depositor is chargeable with the knowledge of all facts a reasonable and prudent examination of bank statement would have disclosed if made by an honest employee); *Pine Bluff Nat'l Bank,* 520 S.W.2d at 258 (depositor is charged with knowledge of all facts that a reasonable and prudent examination of bank statement would disclose if made by one who had not participated in the unauthorized withdrawals); *Rainbow Inn, Inc. v. Clayton Nat'l Bank,* 86 N.J.Super. 13, 205 A.2d 753, 761 (1964) (depositor is charged with knowledge of all facts that a reasonable and prudent examination of the statement would have disclosed if made by a person who had not participated in the forgeries); *George Whalley Co. v. National City Bank,* 55 Ohio App.2d 205, 380 N.E.2d 742, 747 (1977) (noting that rule imputing knowledge to customer/employer is particularly appropriate where customer/employer permitted same employee to both prepare checks and reconcile statements without supervision).

Under section 554.4406(5), the trial court found the cemetery had failed to prove that the bank did not observe reasonable commercial standards, i.e., failing to exercise ordinary care in paying the items and in not paying the items in good faith. Plaintiff cemetery does not challenge this finding on appeal. Thus, the trial court did not assess the comparative fault of the cemetery and the bank under section 554.4406(5).

■ Finally, we point out that section 554.4406(6) does not apply here because

the cemetery presented no evidence regarding whether it reported the problems to defendant bank within one year of the last bank statement.

We thus conclude that plaintiff cemetery is precluded under section 554.4406(4) from asserting against the bank plaintiff's claims concerning unauthorized (or no) signatures or alterations (forgeries) in the checks or accounts. For these reasons, we need not address whether the cemetery's agreements with the bank were modified by a course of dealing between the bank and the cemetery.

## IV. Disposition.

We conclude that plaintiff cemetery had a duty under the written agreements governing its accounts with defendant bank, and under Iowa Code section 554.4406(3) and (4), to promptly (or within certain time limits) examine its account statements and inform the bank of any unauthorized signatures, including lack of required signatures, or alterations with respect to transactions in its accounts. The cemetery did not carry out its duty and is thus precluded from asserting claims against the bank concerning unauthorized signatures or alterations. We therefore affirm the judgment of the district court.

**AFFIRMED.**