(No. 67265.—

SPEC-CAST, INC., Appellant, v. FIRST NATIONAL BANK & TRUST COMPANY OF ROCKFORD, Appellee.

*Opinion filed March 29, 1989.—Rehearing*
*denied May 26, 1989.*

168

Bernard P. Reese, Jr., and William E. Gottfred, of

Reese & Reese, of Rockford, for appellant.

Connolly, Oliver, Close & Worden, of Rockford (Lewis B. Kaplan, of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

Defendant, First National Bank & Trust Company of Rockford, cashed a check drawn on the account of the plaintiff, Spec-Cast, Inc.; however, this check was missing the drawer's signature. Plaintiff filed suit in the circuit court of Winnebago County alleging that a bank cannot, in violation of Uniform Commercial Code section 3—401(1) (Ill. Rev. Stat. 1985, ch. 26, par. 3—401(1)), debit a depositor's account when it makes payment on an unsigned check. The trial court ruled that pursuant to section 1—103 of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 1—103), the bank could raise common law defenses, and it then found that the plaintiff received the benefit of its bargain and ratified the bank's action. The appellate court agreed (168 Ill. App. 3d 615), and the plaintiff filed a petition for leave to appeal before this court. We hold that common law defenses are available to a bank which pays an unsigned check and that the trial court's findings are not against the manifest weight of the evidence.

William E. Jackson, president of Spec-Cast, Inc., agreed to make a loan to Richard A. Lundquist, owner of Richard's Auto Sales, a used-car dealership. Lundquist was experiencing financial difficulties and the loan was intended to allow him to purchase inventory for his business. On February 9, 1983, Jackson met with Lundquist at his office and gave Lundquist an unsigned $20,000 check made payable to Richard's Auto Sales. Jackson claims he purposely did not sign the check, but the trial court concluded that it was left unsigned accidentally. Lundquist was unable to give security for the

loan contemporaneously with the delivery of the check because all of his business assets were subject to a lien in favor of a bank. There was conflicting testimony as to whether or not he was supposed to provide Jackson with a security interest in the items he purchased with the loan. However, the following day, Lundquist delivered a $20,000 unsecured note in favor of Jackson and Spec-Cast. The note recites that it was "for value received" and required Lundquist to pay Jackson $20,000, with interest, on demand. That same day, a $20,000 deposit was made in Spec-Cast's checking account.

On February 11, 1983, defendant First National Bank & Trust Company of Rockford paid the unsigned check. During the second week of March 1983, Jackson received his checking account statement and cancelled checks, and learned that the bank had paid the unsigned check. He requested his secretary to look into the matter. She called the bank and was advised that the check had been paid and that there was nothing the bank could do to get the money back. On March 15, 1983, Jackson met with Richard S. Peterson, a senior vice-president of First National Bank & Trust Company of Rockford. Peterson concurred that there was no action that the bank, at that time, could take concerning the check because it had already been paid. He suggested that the matter be taken up with Lundquist. At trial, Peterson testified it was banking procedure that if a check came through unsigned, it was necessary to obtain authorization for the payment of the check, and that no authorization was received from Jackson to pay the check.

Jackson received an interest payment on the promissory note in the amount of $589 in May 1983. That was the only payment received on the note, and no security was ever provided for the loan. The following year, March 28, 1984, Jackson made a formal, written demand on Lundquist for payment of the promissory note. How-

ever, Lundquist was unable to pay the note. Sometime in May 1984, Jackson spoke with a former bank executive, who informed him that the bank could be held responsible for its improper payment of the check. Later that month, Jackson's attorney contacted the defendant bank and notified it that Jackson held the bank responsible for the $20,000. On June 1, 1984, Lundquist filed for bankruptcy and listed the $20,000 as a debt. When Richard's Auto Sales, Inc., the entity to which the loan was made, went out of business, its assets were used to satisfy business creditors other than Jackson. Plaintiff subsequently filed this action against the bank in October 1984.

Section 3—401(1) of the Uniform Commercial Code provides that "[n]o person is liable on an instrument unless his signature appears thereon." (Ill. Rev. Stat. 1985, ch. 26, par. 3—401(1).) Plaintiff contends that section 3—401(1) establishes a virtual *per se* rule that if the bank pays a check missing the maker's signature, it is liable for the unauthorized payment. Defendant argues that section 3—401 establishes a general rule, but does not preclude it from raising common law defenses.

The check in question was drawn on the account of the plaintiff, Spec-Cast, Inc., and the defendant bank was instructed to only cash Spec-Cast's checks if they were signed by the plaintiff or his wife. The defendant, as the drawee bank, stands in a debtor-creditor relationship to its customer, Spec-Cast. (*National Bank v. Quinn* (1988), 126 Ill. 2d 129, 134.) There is a high standard of contractual responsibility placed upon depository banks to pay checks in strict accordance with the direction of their depositors. (*United States Cold Storage Co. v. Central Manufacturing District Bank* (1931), 343 Ill. 503, 513; *Malley v. East Side Bank* (7th Cir. 1966), 361 F.2d 393, 402.) The bank is bound by the deposit agreement and may not legally pay out funds except upon the approval and signature it has been instructed

are necessary. (*Miller v. First Granite City National Bank* (1953), 349 Ill. App. 347, 351; *Malley v. East Side Bank* (7th Cir. 1966), 361 F.2d 393, 402; 5A Michie, Banks and Banking §170, at 530 (1983).) Defendant failed to exercise reasonable care when it paid the check which was missing the plaintiff's signature. However, contrary to the plaintiff's argument, we do not believe that defendant is precluded from raising a defense when it pays a check missing the signature.

The general rule, pursuant to section 3—401, is that unless a person signs a negotiable instrument, he is not liable on the instrument. (*Miller v. First Granite City National Bank* (1953), 349 Ill. App. 347, 351; *Wolfe v. University National Bank* (1973), 270 Md. 70, 74, 310 A.2d 558, 560; T. Quinn, Uniform Commercial Code Commentary and Law Digest §3—401(A)(1) (1978).) However, the Uniform Commercial Code contemplates that it shall be supplemented by common law principles, including common law defenses. Section 1—103 states:

> "Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." (Ill. Rev. Stat. 1985, ch. 26, par. 1—103.)

The official comments to this section provide in part that:

> "While this section indicates the continued applicability to commercial contracts of all supplemental bodies of law except insofar as they are explicitly displaced by this Act, the principle has been stated in more detail and the phrasing enlarged to make it clear that the 'validating', as well as the 'invalidating' causes referred to in the prior uniform statutory provisions, are included here." Ill. Ann. Stat., ch. 26, par. 1—103, Uniform Commercial Code Comment, at 13 (Smith-Hurd 1963).

See T. Quinn, Uniform Commercial Code Commentary and Law Digest §1—103(A) (1978).

Plaintiff argues that the rule of section 3—401(1) displaces any common law defenses which defendant may try to raise. In support of this proposition, plaintiff cites a pre-Code appellate court case, *Kenneth Investment Co. v. National Bank* (1902), 96 Mo. App. 125, 70 S.W. 173. In *Kenneth*, the defendant paid to plaintiff's bookkeeper numerous checks which he had forged, and one unsigned check. With regard to the unsigned check, the court held that there was negligence *per se* and that the bank was liable for the amount.

We do not believe that this case is dispositive of the issue. In two analogous situations, common law defenses have been recognized for banks which have paid checks missing a signature. In the first instance, a number of courts have allowed banks to raise various defenses when they have paid instruments missing endorsements, though they have not necessarily found the defenses successful. In *United States Fidelity & Guaranty Co. v. Peoples National Bank* (1960), 24 Ill. App. 2d 275, the court rejected the bank's defenses that the draft was improperly prepared so as to make the second payee's name difficult to discern and that the plaintiff was negligent in handling the draft. The bank in *Malley v. East Side Bank* (7th Cir. 1966), 361 F.2d 393, cashed a number of checks which were improperly endorsed. In defense, it argued that it should be relieved of liability because it was an innocent tool in a fraudulent scheme and, due to the "equities" of the situation, liability should fall on the fraudulent third party. In *Murray Walter, Inc. v. Marine Midland Bank* (1984), 103 A.D.2d 466, 480 N.Y.S.2d 631, the bank argued that plaintiff should be estopped from proceeding against it either because of plaintiff's negligence in notifying the bank, or

on a theory of unjust enrichment. See *Northeast Bank v. Bentley* (Fla. App. 1982), 413 So. 2d 480 (bank successfully raised the defense that the intended beneficiary received the proceeds of the check); *Tonelli v. Chase Manhattan Bank, N.A.* (1977), 41 N.Y.2d 667, 363 N.E.2d 564, 394 N.Y.S.2d 858 (court rejected equitable estoppel defenses).

In the second analogous situation, courts have recognized the availability of defenses for banks which have paid checks lacking the required number of signatures. In *Madison Park Bank v. Field* (1978), 64 Ill. App. 3d 838, the bank paid a check which had only one of two required signatures. The defendants raised on appeal the argument of estoppel because the plaintiff had waited too long to report the error. The court ruled that the issue was not properly before it because the issue was raised for the first time on appeal. However, in *dicta,* the court did consider the availability of the defense and found the factual situation distinguishable from those in which estoppel was recognized. The plaintiff in *Phillip v. First National Bank* (1938), 297 Ill. App. 498, had experience as a banker, yet waited over three years before he complained that 33 checks had been cashed without a countersignature. The court found the bank not liable and instead agreed with its defense that the plaintiff was grossly negligent. *Kores Carbon Paper & Ribbons Manufacturing Co. v. Western Office Supply Co.* (1953), 349 Ill. App. 208, involved a garnishment proceeding, wherein the appellate court held that the depositor had ratified the bank's action of honoring 27 checks which lacked a countersignature when the depositor had acquiesced in the payment of such checks over a long period of time. The bank in *Nagle v. La Salle National Bank* (N.D. Ill. 1979), 472 F. Supp. 1185, paid out wire transfers from a two-signature account upon oral request of only one of the two necessary parties. In a motion for

summary judgment, the bank raised the issues of waiver, estoppel and contributory negligence. The court found that there were disputed issues of fact which made the argument improper for summary judgment, but it did not indicate that the defenses were unavailable at trial. In *Wolfe v. University National Bank* (1973), 270 Md. 70, 310 A.2d 558, the court reversed summary judgment entered in favor of a bank which had cashed checks missing a necessary countersignature. It noted that without the signature, the bank could not honor checks under section 3—401(1) of the Code, "in the absence of circumstances which alter the usual rule." (270 Md. at 74, 310 A.2d at 560.) It went on to state that, upon remand, "[t]here may well be defenses available to the Bank, never developed during the procedural stage of the controversy, which could effectively preclude recovery. Such defenses might encompass those available at common law, UCC §1—103, if the provisions of Articles 3 and 4 of the UCC prove inapplicable." 270 Md. at 75, 310 A.2d at 561.

We do not find analogous those cases where the bank has paid on a forged endorsement. In Illinois, payment on a check missing a necessary signature does not constitute payment on an "unauthorized signature" within the meaning of section 4—406 of the Code (Ill. Rev. Stat. 1985, ch. 26, par. 4—406). (*Madison Park Bank v. Field* (1978), 64 Ill. App. 3d 838; *Nagle v. La Salle National Bank* (N.D. Ill. 1979), 472 F. Supp. 1185; Annot., 7 A.L.R. 4th 1111, 1115-18 (1981).) Therefore, that section's provision that if a bank is negligent it is precluded from raising as a defense the depositor's negligence is inapplicable.

We believe the cases on missing endorsements and countersignatures are persuasive for the principle that common law defenses are available. The common law supplements the Code and transactions governed by it,

and section 1—103 is a clear expression of the right of defendant to rely on common law defenses. Nor do we find that section 3—401 displaces application of this principle when a bank pays a check missing the drawer's signature.

Having held that the bank could raise common law defenses, the trial court, relying on *Kores Carbon Paper & Ribbons Manufacturing Co. v. Western Office Supply Co.* (1953), 349 Ill. App. 208, held that the plaintiff received the benefit of the payment of the check when he received the $20,000 promissory note from Lundquist. The court also held that plaintiff ratified the bank's payment when he accepted the note and an interest payment on the note.

The plaintiff argues that these findings are against the manifest weight of the evidence. When reviewing the findings of the trial court in a bench trial in which the evidence is conflicting, this court will not disturb a trial court's findings and substitute its own opinions, unless the holdings of the trial court are manifestly against the weight of the evidence. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.) The trial judge, as the trier of fact, is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. (*Schulenburg*, 37 Ill. 2d at 356; *People v. Cheek* (1982), 93 Ill. 2d 82, 94.) We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of fact, have come to a different conclusion. (*Schulenburg*, 37 Ill. 2d at 356.) We are unable to say that these circuit court findings are against the manifest weight of the evidence.

In weighing the evidence, the trial court rejected Jackson's explanation that he purposely did not sign the

check and he only intended to sign it when he received collateral. Rather, accepting Lundquist's testimony, it held that the plaintiff had intended to sign the check and thought he had done so when he gave it to Lundquist. This finding is consistent with Jackson's behavior the next day of depositing $20,000 in his checking account. The court also found that plaintiff was aware that Lundquist was unable, at that time, to supply any collateral for the check. Therefore, on February 10, in return for the check, Jackson received and accepted the $20,000 promissory note. The note stated that it was "for value received," which was the check that was cashed that day. Jackson would not be entitled to this note if the bank had not paid the check. Thus, it represented his benefit for the bank's payment of the check and it clearly established Lundquist's obligation on the loan. Jackson neither returned the note, nor demanded other collateral. Instead, he accepted an interest payment and later made a written demand under the note to Lundquist. Though Jackson did initially object to the payment of the check, his actions ultimately were to accept its payment and to look to the payee.

Jackson may have wanted collateral in automobiles; nevertheless, his receipt and acceptance of a payment on the note constituted a ratification of the bank's payment of the check. (*Kores Carbon Paper & Ribbons Manufacturing Co. v. Western Office Supply Co.* (1953), 349 Ill. App. 208, 212; see *Bi-County Properties v. Wampler* (1978), 61 Ill. App. 3d 799, 805; *Northeast Bank v. Bentley* (Fla. App. 1982), 413 So. 2d 480, 481.) It was unforeseeable at the time of this deal that Lundquist would file for bankruptcy the next year. Though the bargain Jackson received was ultimately not profitable, he did receive a promissory note in exchange for the $20,000 paid to Lundquist, thus obtaining the benefit of the bank's pay-

ment of the check. Accordingly, we affirm the appellate and circuit courts' rulings.

*Judgments affirmed.*

JUSTICE WARD took no part in the consideration or decision of this case.