MIDWEST INDUSTRIAL FUNDING, DIVISION OF RIVERA LEND LEASE, INC., Plaintiff-Appellee,

v.

FIRST NATIONAL BANK OF LOCKPORT f/k/a Heritage First National Bank of Lockport, Defendant-Appellant.

No. 91-2846.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1992.

Decided Aug. 21, 1992.

Robert P. Zapinski (argued), Robert L. Graham, Jeffrey L. Elegant, Jenner & Block, Chicago, Ill., for plaintiff-appellee.

Martin W. Salzman, Eric S. Rein, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., Timothy J. Rathbun, Gary S. Mueller (argued), McKeown, Fitzgerald, Zollner, Buck, Hutchison & Ruttle, Joliet, Ill., for defendant-appellant.

Before POSNER and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

KANNE, Circuit Judge.

As the district court recognized, the transactions at issue in this case are relatively straightforward. Plaintiff-appellee Midwest Industrial Funding entered into a funding contract with Complete Service Electric, Inc. Midwest and Complete notified Complete's customers of the funding agreement and advised them to send checks for services rendered to:

Complete Service Electric, Ltd.
c/o Midwest Industrial Funding
17W415 Roosevelt Road
Oakbrook Terrace, IL 60181

Under the notification agreement, it is undisputed that checks were to be made payable solely to Complete.

Eagle Construction Corporation, a customer of Complete, made out four checks in payment for services rendered by Complete. But the checks were made payable to:

Complete Service Ele.
Midwest Industrial
17W412 Roosevelt Rd.
Oakbrook Terrace, IL 60181

The checks were endorsed by Complete, but not by Midwest, and were presented to the defendant-appellee First National Bank of Lockport ("the Bank") for payment. The Bank paid the checks in an amount totalling $53,056.10. Midwest then brought this suit which alleged that the Bank converted the checks by paying them without first obtaining Midwest's endorsement.

Before the district court, both parties moved for summary judgment. Midwest relied upon the then current version of chapter 26, ¶ 3–116 of the Illinois Revised Statutes (also § 3–116 of the Uniform Commercial Code). See ILL.REV.STAT. ch. 26, ¶ 3–116 (Smith–Hurd 1963). That paragraph stated:

An instrument payable to the order of two or more persons

(a) if in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it;

(b) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.

Id.[1] See also Gillespie v. Riley Management Corp., 59 Ill.2d 211, 319 N.E.2d 753, 758 (1974) (defendant bank held liable for

[1] The Illinois Legislature has recently enacted revisions to the Uniform Commercial Code but the amendments did not take effect until January 1, 1992, which was after the district court entered judgment in favor of Midwest. Under the amended version the rule contained in ¶ 3–116 is now located in chapter 26, ¶ 3–110(1)(d). The amended version in ¶ 3–110(1)(d) did not alter the substantive rule of ¶ 3–116 that a check made out to joint payees must be endorsed by all payees. However, the new version adds an additional sentence which reads: "[i]f an instrument payable to 2 or more persons is ambiguous as to whether it is payable to the persons alternatively, the instrument is payable to the persons alternatively." ILL.REV.STAT. ch. 26, ¶ 3–110(1)(d).

honoring a cashier's check without endorsement of both payees); *United States Fidelity & Guaranty v. Peoples National Bank of Kewanee,* 24 Ill.App.2d 275, 164 N.E.2d 497, 500 (1960) (applying the Uniform Negotiable Instruments Act to reach the same result); *Hoffman v. First National Bank of Chicago,* 299 Ill.App. 290, 20 N.E.2d 121, 123–24 (1939); *Crahe v. Mercantile Trust & Savings Bank,* 295 Ill. 375, 129 N.E. 120 (1920).

Midwest argued that the checks were made payable to two payees, Complete and Midwest; and that the Bank converted the checks by failing to obtain Midwest's endorsement before paying on the checks. The Bank responded that Eagle clearly intended to make the checks payable only to Complete. In support of that argument, the Bank relied upon the notification sent by Midwest and Complete to Complete's customers, under which checks were to be sent to Complete c/o Midwest.

Judge Norgle was unpersuaded by the Bank's argument because the Bank did not contend that it ever received the notification. He found that the notification was irrelevant: "[the Bank] was simply presented with a series of checks with two names as payee. [The Bank] had no reason to treat the checks differently than any other check with two payees." Accordingly, he entered summary judgment in favor of Midwest and against the Bank on the grounds that the checks were made payable to joint payees and that the Bank failed to obtain Midwest's endorsement.

The Bank then moved to stay enforcement of the judgment pursuant to Rule 62(h) of the Federal Rules of Civil Procedure to allow it to file a cross-claim against defendant-Downers Grove National Bank. Rule 62(h) allows the district court to stay enforcement of a judgment pending the entry of a subsequent judgment in a multi-defendant case.

The district judge denied the motion. He reasoned that a stay was unnecessary because the Bank had chosen to wait until it had been found liable to bring a cross-claim. The district judge also found that there was no indication that Midwest would

seek recovery against Downer's Grove or that any judgment, other than that sought through the Bank's cross-claim, would be forthcoming in the suit. According to the district judge, there was no just reason to delay the entry of judgment. The Bank appealed.

■ We review a grant or denial of summary judgment *de novo. Carston v. The County of Cook,* 962 F.2d 749, 751 (7th Cir.1992); *Pro Eco, Inc. v. Bd. of Com'rs of Jay County, Indiana,* 956 F.2d 635, 637 (7th Cir.1992). Summary judgment is appropriate if we can determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c); *see also Carroll v. Acme-Cleveland Corp.,* 955 F.2d 1107, 1114 (7th Cir.1992). In examining a grant of summary judgment, we " 'view the review the record and all inferences drawn from it in a light most favorable to the party opposing the motion.' " *Carston,* 962 F.2d at 751 (quoting *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990)); *see also Deutchland Enterprises, Ltd. v. Burger King Corp.,* 957 F.2d 449, 452 (7th Cir.1992).

The principal issue in this case is whether the checks were made payable to joint payees or whether they were made payable in the alternative. The Bank argues that the district judge erred in granting summary judgment because there is a genuine issue of material fact as to the number of payees on the checks. The Bank maintains that there are either five payees (namely, "Complete," "Service," "Ele.," "Midwest" and "Industrial") or four payees ("Complete Service Ele.," "Midwest Industrial," "17W412 Roosevelt Road," and "Oakbrook Terrace, IL 60181"). It contends that because the identity of the payee(s) of the checks was ambiguous, the district judge erred in failing to admit parole evidence to aid in the interpretation of the checks.

The Bank's argument that "17W412 Roosevelt Road" and "Oakbrook Terrace, IL 60181" are payees is preposterous. Those terms refer to the address of one of the payee[s] on the check. We are also unpersuaded by the Bank's attempt to de-

scribe "Complete," "Service," "Ele.," "Midwest" and "Industrial" as separate payees on the checks. We therefore conclude that there could only be two possible payees on the checks: Complete and Midwest.

The Bank's more serious argument is based upon the notification, which was in effect when the checks at issue were sent. The Bank contends that under the notification agreement any checks were to be made payable to Complete and sent *c/o* Midwest Industrial. The Bank concludes that there is no indication in the notification agreement nor evidence in the record that Midwest was ever intended to be a payee on the checks. As such, the Bank reasons that Midwest's endorsement on the checks was never required and, if it had been present on the checks, would have had no effect. The Bank further argues that the omission of "c/o" on the checks should not allow Midwest to be unjustly enriched.

According to Midwest, the Bank cannot rely upon the notification agreement because the Bank was not aware of it when it made payment on the checks. Midwest points out that the term "c/o" does not appear on the four checks issued by Eagle. Midwest contends that the Bank seeks to rewrite the checks after the fact, to include "c/o" and recharacterize the status of Midwest.

We agree with Midwest that the district court correctly found that two separate names—Complete and Midwest Industrial—appear on the checks following "Pay to the Order of" language. We must next decide whether, under ¶ 3–116, by operation of law, the two persons named on the checks should be deemed to be joint payees.

■ Courts which have applied ¶ 3–116 have generally refused to examine the drawer's intent in determining whether a check is jointly payable. *See Peoples National Bank v. American Fidelity Fire Ins. Co.*, 39 Md.App. 614, 386 A.2d 1254, 1257 (1978); *Feldman Construction Co. v. Union Bank*, 28 Cal.App.3d 731, 735, 104 Cal.Rptr. 912 (1972); *Van Lunen v. State Central Savings Bank of Keokuk, Iowa*, 751 F.Supp. 145, 148 (S.D.Iowa 1990) (In construing the meaning of the Iowa equivalent of ¶ 3–116, the court stated, "to argue that the intent of the parties controls the payee designation ignores the plain meaning of the statute."). One court examined the drawer's intent because it found that the check was ambiguous. *See Swiss Baco Skyline Logging, Inc. v. Haliewicz*, 18 Wash.App. 21, 567 P.2d 1141, 1147 (1977) (finding that a comma between the names of two persons on the check made the check ambiguous and required the court to ascertain the parties' intent). The general rule is that if there are two names on the check and the check is not payable in the alternative then the statute establishes that check is jointly payable. *See American Fidelity*, 386 A.2d at 1257; *Union Bank*, 28 Cal.App. at 735, 104 Cal.Rptr. 912; *Van Lunen*, 751 F.Supp. at 147–48. Under these decisions, the checks at issue here were jointly payable because they contained two names without any indication that they were payable in the alternative. Therefore, under a literal application of ¶ 3–116, the checks could be negotiated only by both Midwest and Complete.

■ Nevertheless, it is undisputed that under the notification agreement checks were to be made payable to Complete c/o Midwest. The notification agreement raises the possibility that Midwest was not intended to be a payee on the checks. Midwest argues that ¶ 3–116 makes the notification agreement irrelevant because the Bank cannot prove that it was aware of the agreement when it paid on the checks.[2] We are troubled by Midwest's position because, even if the Bank was unaware of the notification agreement when it paid on the checks, the notification agreement suggests that Midwest would receive a windfall if it recovered the face value of the checks. As we shall explain, the Bank's inability to prove that it was aware of the notification agreement before paying on

---

**2.** If the Bank had been aware of the notification agreement when it paid on the checks, it could prove that it knew that the checks were not jointly payable under ¶ 3–116.

the checks does not render the agreement entirely irrelevant.

In a hypothetical case, we will assume that the Bank had received a check with the payee designation "Complete/Acme" which had only been endorsed by Complete. We will also assume that "Acme" was erroneously included as a payee on the check and that Acme had no entitlement to payment. If the Bank had paid on the checks, there would be no doubt that the Bank had erred under ¶ 3–116 because the Bank failed to obtain Acme's endorsement. However, we do not agree with Midwest's contention at oral argument that the Bank's mistake would entitle Acme to recover on the checks. If Acme could recover based upon a mechanical application of ¶ 3–116, it would be unjustly enriched.

The Illinois Supreme Court has allowed a defendant bank to raise common law defenses in a situation similar to this case. *See Spec–Cast v. First National Bank & Trust*, 128 Ill.2d 167, 131 Ill.Dec. 168, 171, 538 N.E.2d 543, 546 (1989). In *Spec–Cast*, the defendant bank cashed a check drawn on the account of the plaintiff although the check was missing the drawer's signature. *Id.* 131 Ill.Dec. at 168, 538 N.E.2d at 543. Section 3–401(1) of the Uniform Commercial Code provides that: "[n]o person is liable on an instrument unless his signature appears thereon." ILL.REV.STAT. ch. 26 ¶ 3–401(1).[3] Despite the plain language of the Code provision, the Illinois Supreme Court ruled that the defendant bank could raise common law defenses, which include unjust enrichment. *Id.* 131 Ill.Dec. at 170–71, 538 N.E.2d at 545–46. In *Lurz v. Panek*, 172 Ill.App.3d 915, 123 Ill.Dec. 200, 527 N.E.2d 663 (1988), the payee-plaintiff alleged that the defendants had converted a check by paying it on a forged endorsement. *Id.* 123 Ill.Dec. at 208, 527 N.E.2d at 671. The court held that the plaintiff could not recover from the drawee the face amount of the check because the plaintiff had already received partial payment from another defendant. *Id.* 123 Ill.Dec. at 209, 527 N.E.2d at 672.

Other courts have allowed drawees to assert unjust enrichment defenses in analogous situations. For example, in *Middle States Leasing Corporation v. Manufacturers Hanover Trust Co.*, 62 A.D.2d 273, 404 N.Y.S.2d 846 (1978), the defendant bank paid a check even though it had been endorsed by one co-payee. *Id.* at 275, 404 N.Y.S.2d 846. The drawer of the check sued the defendant bank to recover on the check. *Id.* The court held that the bank could assert an unjust enrichment defense if it could prove that the proceeds actually reached all of the payees designated by the drawer. *Id.* at 276, 404 N.Y.S.2d 846. The court reasoned that the drawer should not be permitted to recover where it had not experienced a loss from the improper payment of the check. Other courts have allowed drawees to assert an unjust enrichment defense in similar cases. *See Tonelli v. Chase Manhattan Bank, N.A.*, 41 N.Y.2d 667, 394 N.Y.S.2d 858, 860, 363 N.E.2d 564, 567 (Ct.App.1977); *Bank of the West v. WesCon Dev. Co., Inc.*, 15 Wash. App. 238, 548 P.2d 563, 566 (1976); *Yeager & Sullivan, Inc. v. Farmers Bank*, 162 Ind.App. 15, 317 N.E.2d 792, 797 (1974); *Thigpen v. Allstate Indemnity Co.*, 757 F.Supp. 757, 760 (S.D.Miss.1991). We believe that this case may present an appropriate situation to recognize an unjust enrichment defense because "c/o" may have been omitted from the check by mistake.

Moreover, in view of *Spec–Cast* and *Lurz*, we believe that the Illinois courts would allow the bank in the *Acme* case to raise an unjust enrichment defense. *See Douglass v. Wones*, 120 Ill.App.3d 36, 76 Ill.Dec. 114, 121, 458 N.E.2d 514, 521 (1983) (A party may recover on an unjust enrichment claim if it proves "an unjust retention of a benefit, including money, by one party to the detriment of another party, against the fundamental principles of justice, equity, and good conscience.").

▮ Turning to the merits of the unjust enrichment argument, Midwest has not explained why it should be allowed to recover on the checks in view of the notification agreement, which makes clear that Complete was to be the only payee on checks.

---

**3.** This paragraph has been recently amended, but the substantive rule quoted in the text has not been altered. The new version took effect on January 1, 1992.

Midwest's argument and the record evidence do not exclude the possibility that its rights are no better than those of Acme in our hypothetical case. Therefore, although the district judge ruled correctly that the Bank violated ¶ 3–116, we conclude that the grant of summary judgment should be reversed to allow the parties to more fully address the unjust enrichment problem posed by a strict application of ¶ 3–116. The parties should be allowed to admit extrinsic evidence relevant to the Bank's unjust enrichment defense.[4]

Our holding does not contradict the plain meaning of ¶ 3–116 because it applies only in the rare case where a payee may be included on a check by mistake and where allowing the apparent payee to recover would constitute unjust enrichment. We recognize that the Bank could have avoided this costly litigation by more carefully examining the checks, but we must remand this case because we cannot determine whether Midwest would be unjustly enriched if it recovered on the checks.[5]

We REVERSE the judgment of the district court and REMAND this case for further proceedings consistent with our opinion.

---

**4.** At oral argument, counsel for Midwest raised the possibility that the notification agreement was not in effect at the time Eagle issued the four checks.

**5.** In view of our holding, we need not determine whether the district court acted within its discretion in denying the Bank's motion to stay the entry of judgment.