Douglas W. HARVEY d/b/a Homestead House Associates; and The Homestead House, a Montana Corporation, Appellants (Plaintiffs),

v.

FIRST NATIONAL BANK OF POWELL, a National Banking Corporation, Appellee (Defendant).

No. 96–19.

Supreme Court of Wyoming.

Sept. 19, 1996.

**84**

James P. Castberg, Sheridan, for Appellants (Plaintiffs).

John G. Fenn of Yonkee & Toner, Sheridan; and Cecil Alice Johnstone of First National Bank of Powell, Powell, for Appellee (Defendant).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN * and LEHMAN, JJ.

MACY, Justice.

Appellants Douglas Harvey, doing business as Homestead House Associates, and The Homestead House, a Montana corporation, appeal from a judgment as a matter of

* Chief Justice at time of oral argument.

law which was entered in favor of Appellee First National Bank of Powell.

We affirm.

## ISSUES

Appellants request our review of the following issues:

I. The Court erred in not allowing the jury to hear the Appellants' evidence concerning the attorney's fees expended by the Appellants as a result of the wrongful acts of the Appellee.

II. The Court erred in not allowing the Appellants to present the question of punitive damages for consideration by the jury.

III. The Court erred in granting the Appellee's Motion For Judgment As A Matter Of Law following a verdict in favor of the Appellants by the jury.

## FACTS

Julia Achilles, through JBA Furniture, Inc., operated furniture stores in several Wyoming cities. The store at issue in this case, the Furniture Center, was located in Powell. JBA Furniture used First National Bank for its banking and financial needs while it operated the Furniture Center. In 1986, JBA Furniture decided to close the Furniture Center and sought Harvey's assistance in conducting a "going out of business sale" since he had been involved in several similar sales.

On October 28, 1986, Achilles, Harvey, and the loan officer for First National Bank met to discuss a loan for the going out of business sale and other transactions. First National Bank agreed to loan Achilles $20,000 so that she could initiate the sale. A checking account was opened in the name of "JBA Furniture Center Special Account" to be used during the course of the sale, and the $20,000 was placed in that account. First National Bank prepared a signature card for the account and gave it to Achilles, requesting that she obtain the appropriate signatures.

On November 13, 1986, Harvey and Achilles returned the signature card to First National Bank. Achilles, Pam Mooney (Fur-

niture Center's employee), Maxine Allred (Harvey's employee), and Allen Heinze (Achilles's accountant) had signed the card. Notations were written on the card in red ink which read: "2 if over $500" and "2 over $500."

JBA Furniture provided First National Bank with its corporate authorization resolution which was dated November 13, 1986, and which provided in part that two signatures were required on checks and orders for the payment of money and the withdrawal of funds which were on deposit at the bank. The corporate authorization resolution listed Julia Achilles—President, Charles Achilles—Vice President, and Allen Heinze—Secretary as the persons who were authorized to be one of the required two signatures. The second page of the resolution, however, provided:

> RESOLVED, that The First National Bank of Powell, Wyoming is hereby designated a depository of this corporation and that all checks or orders drawn against our account be signed as follows:
>
> CHECKS written in amounts up to $500.00 require one of the following signatures:
>
> Pam Mooney or Maxine Allred
>
> CHECKS [w]ritten in amounts in excess of $500.00 require TWO signatures:
>
> Pam Mooney, Maxine Allred or one of the officers of the Corporation listed below.
>
> ***CHECKS may be written in amounts in excess of $500.00 with one signature, Julia I. Achilles, President.*** In the absence of Julia I. Achilles, Allen Heinze or C.L. Achilles may sign checks over $500.00.

(Emphasis added.)

Allred assisted in the sale and kept track of the bookkeeping aspects of the sale for Harvey. Mooney performed bookkeeping duties and acted as assistant manager for the Furniture Center. She also continued to maintain the bookkeeping activities for JBA Furniture. At the beginning of the sale, Mooney and Allred shared an office in the Furniture Center facility which contained all the accounting data and records as well as

the checkbook to the First National Bank account. Within a week or two, Harvey decided that Mooney should no longer perform her duties in that office and that he and Allred would use the desks in that office. He, therefore, moved Mooney to the front counter where she was to do her work, and he moved into the office with Allred, keeping the checkbook in that office.

First National Bank sent monthly bank statements to the Furniture Center address listed on the signature card. Mooney reconciled the bank statements and placed them in a filing cabinet which was located in the office that Harvey and Allred shared. Allred saw some of the statements which were mailed to the store. She was aware that Mooney reconciled them and that they were available to her if she wanted them.

On February 18, 1987, and February 23, 1987, Achilles wrote two checks on the account to withdraw $50,821.80 and $37,653.84, respectively. She presented the checks simultaneously to First National Bank for payment. Upon review of the signature card and the resolution, and in reliance on the second page of the resolution, a loan administrator for First National Bank determined that the resolution took precedence over the signature card and that, therefore, only one signature was required on the checks, and he allowed Achilles to withdraw the funds.

Appellants filed a complaint against First National Bank on February 22, 1991, wherein they claimed that the bank had breached the account agreement by allowing Achilles to withdraw the money from the account with checks which contained only her signature and that, as a result of that breach, Appellants were denied the funds which they were entitled to have. A jury trial was held from June 19, 1995, through June 22, 1995. At the close of Appellants' case in chief, First National Bank moved for a judgment as a matter of law pursuant to W.R.C.P. 50. The trial court granted the motion with respect to the punitive damages claim, finding that no evidence supported a finding of willful and wanton misconduct on First National Bank's part. With regard to the other claims, the trial court took the motion under advisement. At the close of the evidence, First National

Bank renewed its motion for a judgment as a matter of law. The trial court indicated that the motion was still under advisement.

The jury found that First National Bank had breached the account agreement, had been negligent in performing its duties to Appellants, and had breached its fiduciary duties to Appellants. The jury assessed fault at fifty percent for Appellants and at fifty percent for First National Bank and found that the total damages sustained by Appellants was $10,000.

First National Bank again renewed its motion for a judgment as a matter of law. After a hearing on the motion, the trial court granted First National Bank's motion, set aside the jury's verdict, and dismissed Appellants' complaint. Appellants appeal from that decision.

## STANDARD OF REVIEW

■■■ Our standard for reviewing a judgment as a matter of law is well established:

Generally, a motion for [a judgment as a matter of law] is reviewed by determining whether the jury reached the one conclusion reasonable jurors could have reached under the circumstances. However, W.R.C.P. 50(a)(1) allows a court to grant a motion for [a judgment as a matter of law] if the evidence presented at trial is legally insufficient. Thus, when the case is allowed to go to the jury and the jury renders a verdict which is not supported by legally sufficient evidence, the trial court has an obligation to direct the entry of judgment as a matter of law. This obligation must be fulfilled despite the fact that judgment as a matter of law should be granted cautiously and sparingly. The decision to grant or deny a motion for [a] judgment as a matter of law is reviewed *de novo*.

*Del Rossi v. Doenz*, 912 P.2d 1116, 1118–19 (Wyo.1996) (citations omitted).

## DISCUSSION

■■■ Appellants maintain that the trial court erred in granting First National Bank's motion for a judgment as a matter of law following the jury verdict which favored Ap-

pellants. First National Bank argues that Appellants' claims were barred under WYO. STAT. § 34–21–475 (1977), *renumbered* WYO. STAT. § 34.1–4–406(d) (1990) (amended 1991), since Harvey failed to notify the bank within one year that the checks contained unauthorized signatures.

■■ Section 34–21–475(d) provided:

(d) Without regard to care or lack of care of either the customer or the bank a customer who does not within one (1) year from the time the statement and items are made available to the customer (subsection (1) [subsection (a)]) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within three (3) years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

This statute placed an absolute time limit of one year on a customer's right to make a claim for the payment of an instrument which contained an unauthorized signature. The one-year limitation period was not merely a limitation but was a rule of substantive law which barred absolutely a customer's untimely asserted right to make a claim against the bank. *Provident Savings Bank v. United Jersey Bank*, 207 N.J.Super. 303, 504 A.2d 135, 137 (Law Div.1985); *Brighton, Inc. v. Colonial First National Bank*, 176 N.J.Super. 101, 422 A.2d 433, 437 (App.Div. 1980), *cert. granted* 85 N.J. 500, 427 A.2d 587 *and judgment aff'd* 86 N.J. 259, 430 A.2d 902 (1981). The statute imposed on customers the duty to promptly examine their bank statements and notify the bank of improper signatures. *Id.*

Several jurisdictions have addressed the issue of whether a missing signature falls within the meaning of an "unauthorized signature." The majority view is that a missing signature on a two-signature check does fall within the meaning of an "unauthorized signature." *Knight Communications, Inc. v. Boatmen's National Bank of St. Louis*, 805 S.W.2d 199, 201 (Mo.Ct.App.1991); *Provident Savings Bank*, 504 A.2d at 138; *Southern Contract Carpet, Inc. v. County National*

*Bank of South Florida,* 528 So.2d 42, 43 (Fla.Dist.Ct.App.1988); *Rascar, Inc. v. Bank of Oregon,* 87 Wis.2d 446, 275 N.W.2d 108, 111 (App.1978); *Pine Bluff National Bank v. Kesterson,* 257 Ark. 813, 520 S.W.2d 253, 258 (1975). *Contra Wolfe v. University National Bank,* 270 Md. 70, 310 A.2d 558, 560–61 (1973). The minority view that a missing signature is not an unauthorized signature has been soundly criticized by commentators and other courts. *Southern Contract Carpet, Inc.,* 528 So.2d at 44; *Rascar, Inc.,* 275 N.W.2d at 111; *King of All Manufacturing, Inc. v. Genesee Merchants Bank & Trust Co.,* 69 Mich.App. 490, 245 N.W.2d 104, 105 (1976) (citing 6D Willier & Hart UCC Reporter–Digest, § 4–406, A16; Clark & Squillante, The Law of Bank Deposits, Collections and Credit Cards, 1975 Cum.Supp., pp. 3–4).

The legislature's intention to have the majority rule apply to Wyoming is supported by its subsequent enactment in 1991 of § 34.1–3–403 and the official comment to that section. Section 34.1–3–403 provides in pertinent part:

> (b) If the signature of more than one (1) person is required to constitute the authorized signature of an organization, the signature of the organization is unauthorized if one (1) of the required signatures is lacking.

WYO. STAT. § 34.1–3–403 (1991). Official comment 4 to that section provides in pertinent part:

> 4. Subsection (b) clarifies the meaning of "unauthorized" in cases in which an instrument contains less than all of the signatures that are required as authority to pay a check. Judicial authority was split on the issue whether the one-year notice period ... barred a customer's suit against a payor bank that paid a check containing less than all of the signatures required by the customer to authorize payment of the check. Some cases took the view that if a customer required that a check contain the signatures of both A and B to authorize payment and only A signed, there was no unauthorized signature within the meaning of that term ... because A's signature was neither unauthorized nor forged. The other cases correctly pointed

out that it was the customer's signature at issue and not that of A; hence, the customer's signature was unauthorized if all signatures required to authorize payment of the check were not on the check. Subsection (b) follows the latter line of cases.

In the case at bar, Appellants admit that Harvey was First National Bank's customer. As a customer, he had a duty to notify First National Bank within one year of any unauthorized signatures. First National Bank did not receive notification from anyone with regard to the single signature on the checks until four years after the checks had been paid. Harvey's failure to timely review the statements and notify First National Bank prevents Appellants' current claims against the bank.

Appellants attempt to avoid the statutory time limitation by couching their unauthorized signatures claim in different terms; i.e., claims under tort and contract and fiduciary duty theories. They cannot overcome the one-year bar by attempting to assert their claims in different terms:

> Plaintiffs' argument is without merit. Whether defendants neglectfully failed to discover the forged signatures or by reason of paying forged items and debiting plaintiffs' account converted their money, the fact remains that the sine qua non for a drawee bank's liability to its customer is payment of an item over a forged or unauthorized signature of a drawer or of an item not otherwise properly payable. Without that essential element, the banks' neglect would not create liability; they would not have converted their customers' funds and would not be in possession of their customers' money subject to recovery for monies had and received.

*Brighton, Inc.,* 422 A.2d at 438 (citation omitted). *See also Provident Savings Bank,* 504 A.2d at 136 (defendant admitted that negligence and breach-of-contract causes of action were barred by U.C.C. § 4–406(4)); *American Home Assurance Company v. Scarsdale National Bank and Trust Company,* 96 Misc.2d 715, 409 N.Y.S.2d 608, 610 (1978) (claim for breach of contract must comply with both six-year limitation and U.C.C. § 4–406(4) condition precedent requirement).

Finally, Appellants assert that Achilles's signature was an authorized signature by virtue of the corporate authorization resolution and that, therefore, the one-year notification requirement for unauthorized signatures did not apply. This argument is useless to Appellants because, if the single signature was authorized, First National Bank did nothing wrong.

■ We adopt the majority rule that a missing signature falls within the meaning of an "unauthorized signature" when more than one signature is required. Since Appellants failed to inform First National Bank within the statutory time limitation that the checks contained an unauthorized signature, the jury could not have reasonably concluded as it did.

Our decision on this issue is dispositive of Appellants' remaining issues. We, therefore, will not address them.

Affirmed.